## DAVISON *against* CHAMPLIN :

### IN ERROR.

The state courts have no jurisdiction of suits arising on the penal laws of the
*United States;* nor can jurisdiction be conferred upon them, by an act of
Congress.
Therefore, an action to recover the penalty inflicted by the 19th section of the
consolidated act regarding the post-office department, approved the 3rd of
*March* 1825, for an alleged violation of that act, cannot be sustained in the
courts of this state.
And if such action be brought in such court, the defendant may take advan-
tage of the want of jurisdiction, by motion in arrest for the insufficiency of
the declaration, after trial on the general issue.

THIS was an action of debt, instituted by *Champlin,* in his
own name and in behalf of the *United States,* in the county
court of the county of *New-London,* against *Davison,* master of
the steam-boat *Fanny,* passing regularly as a packet-boat on
the waters between the port of *New-London* and the port of
*New-York,* to recover the penalty of fifty dollars for an alleged
violation of the 19th section of an act of the Congress of the
*United States,* approved the 3rd of *March,* 1825, entitled, "An
act to reduce into one the several acts establishing and regula-
ting the post-office department."   During the pendency of the
cause in the county court, *viz.* on the 7th day of the term, after
the pleadings were closed, the plaintiff moved to amend the
declaration, by increasing the amount of the debt demanded
from 50 to 110 dollars, and by adding two new counts.   This
amendment was objected to, by the defendant, but the court

allowed it.    The cause was then tried, by the jury, upon the *New-London,* plea of *owe nothing ;* and a verdict found for the plaintiff.    A *July, 1828.* motion in arrest of judgment was filed by the defendant, on the ground of the insufficiency of the declaration ; and by the county court it was adjudged sufficient, and judgment was rendered for the plaintiff.    To reverse that judgment, the present writ of error was brought in the superior court, and reserved for the consideration and advice of this court.

Davison
*v.*
Champlin.

*Child,* for the plaintiff in error, contended, 1. That the county court erred in allowing the amendment made by the plaintiff ; because it changed both the *form* and the *ground* of action.

2. That the county court had not jurisdiction of the suit. First, Congress had no authority to confer any portion of the judicial power of the *United States* upon a state court.   *Const. U. S. art.* 3.   1 *Wheat.* 326. 330.   Secondly, the offence charged in the declaration is cognizable by the judicial power of the *United States* only.   1 *Wheat.* 337.   *The United States* v. *Lathrop,* 17 *Johns. Rep.* 4. 9.

*Isham,* for the defendant in error, contended, 1. That the amendment was properly allowed ; and if otherwise, still the allowance or refusal of an amendment cannot be assigned for error.   *Fuller* v. *Hampton,* 5 *Conn. Rep* 416. 425.

2. That the county court had jurisdiction of the suit.   From the commencement of our government, Congress has exercised the power of conferring jurisdiction on state courts.   *The United States* v. *Dodge* & al. 14 *Johns. Rep.* 95.

3. That if the county court had not jurisdiction, the plaintiff in error cannot avail himself of the want of it, in this way.  He has submitted to the jurisdiction, by pleading the general issue, and not pleading to the jurisdiction.   1 *Chitt. Plead.* 426, 7. *Smith* v. *Elder,* 3 *Johns. Rep.* 105.   If the court has not a general jurisdiction of the subject matter, the defendant must plead to the jurisdiction, and cannot take advantage of it under the general issue.

DAGGETT, J.   The plaintiff in error urges, as one ground of reversal, that by the record, it appears, that the county court allowed an amendment, which, by law, could not be allowed. On this point I deem it unnecessary to express an opinion, as

another question of great importance, decisive of the case, is made, and must be settled, without reference to technical objections.

It is said, by the defendant in error, that a plea to the jurisdiction of the court should have been interposed; and that, having gone to issue on the plea of *owe nothing*, the defendant in the original suit, cannot allege, by way of objection to the sufficiency of the declaration, a defect of jurisdiction in the court. This suggestion is of no force, if the act, on which the original plaintiff brought his suit, so far as it attempts to confer jurisdiction on the county court, is void. To that point, then, and to that only, will the opinion which I am about to express, be directed.

By the 37th sect. of the act under consideration, the courts of the several states (and of course, the courts of this state) are declared to be vested with the power of holding jurisdiction of causes of action, arising under the act; and the same section enacts, that such "judiciary" *shall* take cognizance thereof. The Congress having thus attempted to confer jurisdiction, and enjoined the exercise thereof, the case is invested with great importance. Its importance is enhanced, by the fact, that very early after the government went into operation under the constitution, the legislature of the Union adopted the practice of endeavouring to vest the courts of the several states with judicial power; and the practice has been followed, by successive legislatures, to this day.

It is worthy of particular attention, that the constitution and the laws of the *United States*, which shall be made *in pursuance thereof*, are the supreme law of the land; and the judges in every state are "bound thereby." *Const. U. S. art.* 6. Thus, it is seen, that if the courts of this state refuse cognizance of causes when thus enjoined, it must be on the sole ground, that the law enjoining it is not made *in pursuance of the constitution of the United States*, and is therefore not binding on the judges of the several states; and that this court, in the case under consideration, has a right to decide on the power of the legislature to pass such a law, and pronounce it either valid or void. In regard to the last position, the right of the court so to decide, there is now, whatever may have been the case heretofore, no doubt. High as the power may be of deciding on the constitutionality of a law of the Congress of the *United States*, it is believed, that it is now universally conceded to the courts of

the *United States*, and to those of the several states, with the only limitation that it be not exercised *in declaring a law void*, without a sacred regard to the high authority enacting it, and a thorough conviction of the correctness of the decision. The sole enquiry, therefore, is, was the law under consideration made in pursuance of the constitution of the *United States?* Momentous as this question may be, it is the clear duty of the court to decide it, leaving to the party affected by the decision, the constitutional right of revising it in the supreme court of the *United States.*

It is an axiom, that in every well constructed government, the judicial power is coextensive with the legislative. The judicial department receives from the constitution, or the legislature, the power of construing all its laws. This axiom is an important part of the constitution of the *United States.* The third article declares, " that the judicial power shall extend to all cases in law or equity, arising under the constitution, *the laws of the United States,* or treaties made, or which shall be made, under their authority " *Osborne* v. *United States Bank,* 9 *Wheat.* 818, 19. It is difficult to imagine a more explicit and ample grant of power. In what *courts* is this power to be vested ? This question is definitely answered, by the first section of the third article. " The judicial power of the *United States* shall be vested in one supreme court, and in such inferior courts as the Congress may, from time to time, ordain and establish." It would be a violation of the constitution to vest any portion of the power vested in the supreme court, by the constitution, *in any inferior court of the United States,* and more clearly so, *in any court of a state.* A subsequent part of the third article declares the powers of the supreme court, *by original jurisdiction,* as in all cases affecting ambassadors, &c. ; and in all other cases arising under the constitution, &c., the jurisdiction is appellate, " with such exceptions and under such regulations as the Congress shall make." The residue of the judicial power, coextensive, as we have seen, with the legislative, is " vested in such inferior courts as the Congress may, from time to time, ordain and establish." The courts of the several states are not the *inferior courts* mentioned in the constitution. *They* are inferior in the relation they sustain to the supreme court, as depositories of the judicial power of the *United States.* They are not, in any sense, *inferior courts, ordain-*

ed and established by Congress. On the contrary, they are established by the constitution and laws *of the states*. The judges are appointed, the te nure of office fixed, and compensation and responsibility regulated, by the constitution and laws of *the states*. How, then, can it be insisted, that the law under consideration was made *in pursuance of the constitution of the United States ?*

Moreover, this point has been decided, and so conclusively too, that it can hardly be deemed an open question. It has been holden, by Judges *Bland* and *Harrison* of *Maryland*, *Cheves* of *South Carolina*, and by the General Court of *Virginia*, consisting of nine Judges, that Congress have no power to give to a state court jurisdiction over cases of a penal or criminal nature arising under the laws of the *United States*. 17 *Johns. Rep.* 265.

In *The United States* v. *Lathrop*, 17 *Johns. Rep.* 4. the question was considered very fully, by the supreme court of *New-York*, and an able and satisfactory opinion delivered by Ch. J. *Spencer*, against the jurisdiction of the court of the state, in a case in principle precisely similar to that under consideration.

*Marshall*, Ch. J says : " The state courts are not in any sense of the word *inferior* courts, except in the particular cases, in which an appeal lies from their judgment to this court." " They are not inferior courts, because they emanate from distinct authority, and are the creatures of a distinct government." 4 *Cranch* 97.

In *Martin* v. *Hunter's* lessee, 1 *Wheat. Rep.* 330. in an irresistible argument of the supreme court, by Mr. Justice *Story*, it is declared, that " Congress cannot vest any portion of the judicial power of the *United States*, except in courts ordained and established by itself." Again, (in 1 *Wheat. Rep.* 337.) the court say : " No part of the criminal jurisdiction of the *United States* can, consistently with the constitution, be delegated to state tribunals. It can only be in those cases, where, previous to the constitution, state tribunals possessed jurisdiction, independent of national authority, that they can now exercise a concurrent jurisdiction."

Thus, decisions of the highest authority, bearing directly on the point, are opposed to the jurisdiction of the county court in this case.

No less conclusive is the acknowledged law, that the courts

of one state cannot enforce the penal laws of another state. The courts of *Connecticut*, for example, cannot hold jurisdiction of a suit on a penal law of *Massachusetts* or *New-York*. To this point there is an express decision of the supreme court of the latter state. *Scoville* v. *Canfield*, 14 *Johns. Rep.* 338. And, without the aid of that case, the principle is every where recognized, as established by universal law. Not to speak of the deplorable weakness, necessarily implied in the dependence of a sovereign power on a foreign government to punish violations of penal laws, there are numerous difficulties easily suggested to a reflecting mind. To what treasuries are the forfeitures to belong? What gaols are to receive those who are to be imprisoned? To what tribunals are sheriffs amenable for neglect or violation of duty?

But it may be asked, are not the laws of the *United States* of binding authority on the courts of the several states? Doubtless they are, when made in pursuance of the constitution. A collector of the port of *New-London* has seized ten hogsheads of sugar for having been landed without a permit, and in violation of the revenue law of the *United States*. In an action of trespass brought before a court of the state for taking the sugar, he justifies by virtue of his office, and the law of the *United States* The court is bound to give full effect to that law.

So, a suit is brought on a promissory note, executed in *Massachusetts*, before a court in *Connecticut*. The defendant shows, under a proper plea, that the note, by the law of *Massachusetts*, is usurious, and therefore void. The court must regard the law of *Massachusetts*, and refuse to enforce the contract. But had the note been paid, and the usurious interest received in *Massachusetts*, could a *qui tam* action be sustained in *Connecticut* for the penalty annexed to their law against usury? Now, in relation to crimes, made so by the laws of the *United States*, the government of the *United States* is to be regarded in *Connecticut* as foreign to and independent of the government and laws of *Connecticut*. A person cannot be punished, by a court in *Connecticut*, under the statute of the *United States*, for robbing the mail of the *United States*; nor for an act of piracy on the high seas; nor can the courts of the *United States* hold jurisdiction of an indictment for burglary or rape, committed within the jurisdiction of *Connecticut*.

Should it be said, that it is a matter of convenience to sustain jurisdiction in cases of this nature: that courts and magis-

*New-London,*
July, 1828,

Davison
v.
Champlin.

*New-London,* trates are not appointed by the *United States,* to hear and de-
July, 1828. termine these apparently trivial offences ; nor has Congress
Davison ordained and established such inferior courts as could, with
*v.*
Champlin. propriety, take cognizance of these offences ; an easy reply can
be made.   The Congress have the power.   Let them occupy,
with their courts, the whole judicial ground.   If from any mo-
tives, (and we are not at liberty to enquire at all on that sub-
ject) they omit to ordain and establish inferior courts, or to
vest judicial power in courts already established ; that cannot
justify a court in *Connecticut* in exercising judicial power of the
*United States,* never vested in them by the constitution, nor in
obeying a law not made in pursuance of the constitution.

It seems there is a broad distinction between suits on bonds
given to the *United States,* suits for seamen's wages, &c. &c.
where the courts of the state have a common law juris-
diction, and actions for penalties for the violation of the penal
laws of the *United States.*   These distinctions are well sus-
tained in *The United States* v. *Lathrop,* 17 *Johns. Rep.* 4.

The superior court is advised, that the judgment of the
county court be reversed.

In this opinion the other Judges concurred, except BRAIN-
ARD, J., who was absent.

*                    Judgment to be reversed.