# HUNTINGTON v. ATTRILL.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 33. Argued April 26, 1892. — Decided December 12, 1892.

A bill in equity in one State to set aside a conveyance of property made in fraud of creditors, and to charge it with the payment of a judgment since recovered by the plaintiff against the debtor in another State upon his liability as an officer in a corporation under a statute of that State, set forth the judgment and the cause of action on which it was recovered; and also asserted, independently of the judgment, an original liability of the defendant as a stockholder and officer in that corporation before the conveyance. The highest court of the State declined to entertain the bill by virtue of the judgment, because it had been recovered in another State in an action for a penalty; or to maintain the bill on the original liability, for various reasons. *Held*, that the question whether due faith and credit were thereby denied to the judgment was a Federal question, of which this court had jurisdiction on writ of error.

The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act.

A statute making the officers of a corporation, who sign and record a false

certificate of the amount of its capital stock, liable for all its debts, is not a penal law in the international sense.

Whether a statute of one State is a penal law which cannot be enforced in another State is to be determined by the court which is called upon to enforce it.

If the highest court of a State declines to give full faith and credit to a judgment of another State, because in its opinion that judgment was for a penalty, this court, in determining whether full faith and credit have been given to that judgment, must decide for itself whether the original cause of action was penal in the international sense.

If a judgment for a fixed sum of money, recovered in one State by a creditor of a corporation against one of its officers upon a liability for all its debts, imposed by a statute of that State for making and recording a false certificate of the amount of its capital stock, is sued on in a court of another State, and that court declines to enforce the judgment because of its opinion that the original liability was a penalty, the judgment is thereby denied the full faith, credit and effect to which it is entitled under the Constitution and laws of the United States.

IN EQUITY. The bill was dismissed by the Court of Appeals of Maryland, to which judgment this writ of error was sued out.

*Mr. Hugh L. Bond, Jr.* and *Mr. John K. Cowen* for plaintiff in error, (with whom was *Mr. E. J. D. Cross* on the brief,) cited: *Christmas* v. *Russell*, 5 Wall. 290; *Dennick* v. *Railroad Co.*, 103 U. S. 11; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; 2 Morawetz on Corporations, § 908 *et seq.*; *Neal* v. *Moultrie*, 12 Georgia, 104; *Livingston* v. *Jefferson*, 1 Brock. 203; *McKenna* v. *Fisk*, 1 How. 241; *Allen* v. *Pittsburg & Connellsville Railroad Co.*, 45 Maryland, 41; *Phillips* v. *Eyre*, L. R. 6 Q. B. 1; *Mitchell* v. *Harmony*, 13 How. 115; *Le Forest* v. *Tolman*, 117 Mass. 109; *Boyce* v. *Wabash Railway Co.*, 63 Iowa, 70; *Erickson* v. *Nesmith*, 4 Allen, 233; *Andrews* v. *Callender*, 13 Pick. 484; *Halsey* v. *McLean*, 12 Allen, 438; *S. C.* 90 Am. Dec. 157; *Erickson* v. *Nesmith*, 46 N. H. 371; *Flash* v. *Conn*, 109 U. S. 371; *Richardson* v. *N. Y. Central Railroad*, 98 Mass. 85; *Claflin* v. *Houseman*, 93 U. S. 130; *Steam Engine Co.* v. *Hubbard*, 101 U. S. 188; *Chase* v. *Curtis*, 113 U. S. 452; *Union Iron Co.* v. *Pierce*, 4 Bissell, 327; *Railway Co.* v. *Whitton*, 13 Wall. 270; *Prescott* v. *Nevers*, 4 Mason, 326; *Parrott* v. *Barney*, 1 Sawyer, 423;

Citations for Defendant in Error.

*Reed* v. *Northfield,* 13 Pick. 94; *S. C.* 23 Am. Dec. 761; *Palmer* v. *York Bank,* 18 Maine, 166; *S. C.* 36 Am. Dec. 710; *Steere* v. *Field,* 2 Mason, 486; *Servis* v. *Marsh,* 38 Fed. Rep. 794; *Stanley* v. *Wharton,* 9 Price, 301; *Read* v. *Chelmsford,* 16 Pick. 128; *Gray* v. *Bennett,* 3 Met. (Mass.) 522; *Mitchell* v. *Clapp,* 12 Cush. 278; *Daniels* v. *Hart,* 118 Mass. 543; *Godard* v. *Gray,* L. R. 6 Q. B. 139; *Rousillon* v. *Rousillon,* 14 Ch. D. 351; *White* v. *How,* 3 McLean, 291; *Falconer* v. *Campbell,* 2 McLean, 195; *Huntington* v. *Attrill,* 8 Times Law Rep. 341 (P. C. February 17, 1892).

*Mr. William A. Fisher,* (with whom was *Mr. S. T. Wallis* on the brief,) for defendant in error cited: *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265; *Evans* v. *Sprigg,* 2 Maryland, 457; *First Nat. Bank* v. *Price,* 33 Maryland, 487; *Steam Engine Co.* v. *Hubbard,* 101 U. S. 188; *Marrow* v. *Brinkley,* 129 U. S. 178; *Missouri Pacific Railway* v. *Humes,* 115 U. S. 512; *Boynton* v. *Ball,* 121 U. S. 457; *Cole* v. *Cunningham,* 133 U. S. 107; *Flash* v. *Conn,* 109 U. S. 371; *Maryland* v. *Baltimore & Ohio Railroad,* 3 How. 534; *United States* v. *Lathrop,* 17 Johns. 4; *Scoville* v. *Canfield,* 14 Johns. 338; *Breitung* v. *Lindauer,* 37 Michigan, 217; *Sturges* v *Burton,* 8 Ohio St. 215; *S. C.* 72 Am. Dec. 582; *Shaler Quarry Co.* v. *Bliss,* 34 Barb. 309; *Mitchell* v. *Hotchkiss,* 48 Connecticut, 9; *Spies* v. *Illinois,* 123 U. S. 131, 163; *Chanute City* v. *Trader,* 132 U. S. 210; *Adams County* v. *Burlington & Missouri Railroad,* 112 U. S. 123; *State* v. *Youmans,* 5 Indiana, 280; *Ex parte McNiel,* 13 Wall. 236; *Reynolds* v. *Crawfordsville Bank,* 112 U. S. 405; *Dennick* v. *Railroad Co.,* 103 U. S. 11; *Smith* v. *Railroad Co.,* 99 U. S. 398; *Green* v. *Neal,* 6 Pet. 291; *Meade* v. *Beale,* Taney, 339; *Lorman* v. *Clarke,* 2 McLean, 568; *Holmes* v. *Railway Co.,* 5 Fed. Rep. 75; *Whitehead* v. *Entwhistle,* 27 Fed. Rep. 778; *Buford* v. *Holley,* 28 Fed. Rep. 680; *Price* v. *Wilson,* 67 Barb. 9; *Bird* v. *Hayden,* 2 Abbott's Pr. (N. S.) 61; *Garrison* v. *Howe,* 17 N. Y. 458; *Wiles* v. *Suydam,* 64 N. Y. 173; *Langdon* v. *New York &c. Railroad,* 58 Hun, 122; *Chase* v. *Curtis,* 113 U. S. 452; *Sayles* v. *Brown,* 40 Fed. Rep. 8.

MR. JUSTICE GRAY delivered the opinion of the court.

This was a bill in equity, filed March 21, 1888, in the Circuit Court of Baltimore City, by Collis P. Huntington, a resident of New York, against the Equitable Gas Light Company of Baltimore, a corporation of Maryland, and against Henry Y. Attrill, his wife and three daughters, all residents of Canada, to set aside a transfer of stock in that company, made by him for their benefit and in fraud of his creditors, and to charge that stock with the payment of a judgment recovered by the plaintiff against him in the State of New York, upon his liability as a director in a New York corporation, under the statute of New York of 1875, c. 611, the material provisions of which are copied in the margin.[1]

The bill alleged that on June 15, 1886, the plaintiff recovered, in the Supreme Court of the State of New York, in an action brought by him against Attrill on March 21, 1883, a

---

[1] SEC. 21. If any certificate or report made, or public notice given, by the officers of any such corporation, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof.

SEC. 37. In limited liability companies, all the stockholders shall be severally individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company has been paid in, and a certificate thereof has been made and recorded as hereinafter prescribed. . . . The capital stock of every such limited liability company shall be paid in, one half thereof within one year and the other half thereof within two years from the incorporation of said company, or such corporation shall be dissolved. The directors of every such company, within thirty days after the payment of the last instalment of the capital stock, shall make a certificate stating the amount of the capital so paid in, which certificate shall be signed and sworn to by the president and a majority of the directors; and they shall, within the said thirty days, record the same in the office of the secretary of state, and of the county in which the principal business office of such corporation is situated.

SEC. 38. The dissolution for any cause whatever, of any corporation created as aforesaid, shall not take away or impair any remedy given against such corporation, its stockholders or officers, for any liabilities incurred previous to its dissolution.

judgment for the sum of $100,240, which had not been paid, secured or satisfied; and that the cause of action on which that judgment was recovered was as follows: On February 29, 1880, the Rockaway Beach Improvement Company, Limited, of which Attrill was an incorporator and a director, became a corporation under the law of New York, with a capital stock of $700,000. On June 15, 1880, the plaintiff lent that company the sum of $100,000, to be repaid on demand. On February 26, 1880, Attrill was elected one of the directors of the company, and accepted the office, and continued to act as a director until after January 29, 1881. On June 30, 1880, Attrill, as a director of the company, signed and made oath to, and caused to be recorded, as required by the law of New York, a certificate, which he knew to be false, stating that the whole of the capital stock of the corporation had been paid in, whereas in truth no part had been paid in; and by making such false certificate became liable, by the law of New York, for all the debts of the company contracted before January 29, 1881, including its debt to the plaintiff. On March 8, 1882, by proceedings in a court of New York, the corporation was declared to be insolvent and to have been so since July, 1880, and was dissolved. A duly exemplified copy of the record of that judgment was annexed to and made part of the bill.

The bill also alleged that "at the time of its dissolution as aforesaid, the said company was indebted to the plaintiff and to other creditors to an amount far in excess of its assets; that by the law of the State of New York all the stockholders of the company were liable to pay all its debts, each to the amount of the stock held by him, and the defendant, Henry Y. Attrill, was liable at said date and on April 14, 1882, as such stockholder, to the amount of $340,000, the amount of stock held by him, and was on both said dates also severally and directly liable as a director, having signed the false report above mentioned, for all the debts of said company contracted between February 26, 1880, and January 29, 1881, which debts aggregate more than the whole value of the property owned by said Attrill."

The bill further alleged that Attrill was in March, 1882, and had ever since remained, individually liable in a large amount over and above the debts for which he was liable as a stockholder and director in the company; and that he was insolvent, and had secreted and concealed all his property for the purpose of defrauding his creditors.

The bill then alleged that in April, 1882, Attrill acquired a large amount of stock in the Equitable Gas Light Company of Baltimore, and forthwith transferred into his own name as trustee for his wife 1000 shares of such stock, and as trustee for each of his three daughters 250 shares of the same, without valuable consideration, and with intent to delay, hinder and defraud his creditors, and especially with the intent to delay, hinder and defraud this plaintiff of his lawful suits, damages, debts and demands against Attrill, arising out of the cause of action on which the aforesaid judgment was recovered, and out of the plaintiff's claim against him as a stockholder; that the plaintiff in June, 1880, and ever since was domiciled and resident in the State of New York, and that from February, 1880, to December 6, 1884, Attrill was domiciled and resident in that State, and that his transfers of stock in the gas company were made in the city of New York where the principal office of the company then was, and where all its transfers of stock were made; and that those transfers were, by the laws of New York, as well as by those of Maryland, fraudulent and void as against the creditors of Attrill, including the creditors of the Rockaway Company, and were fraudulent and void as against the plaintiff.

The bill further, by distinct allegations, averred that those transfers, unless set aside and annulled by a court of equity, would deprive the plaintiff of all his rights and interests of every sort therein, to which he was entitled as a creditor of Attrill at the time when those fraudulent transfers were made; and "that the said fraudulent transfers were wholly without legal consideration, were fraudulent and void, and should be set aside by a court of equity.".

The bill prayed that the transfer of shares in the gas company be declared fraudulent and void, and executed for the

purpose of defrauding the plaintiff out of his claim as existing creditor; that the certificates of those shares in the name of Attrill as trustee be ordered to be brought into court and cancelled; and that the shares "be decreed to be subject to the claim of this plaintiff on the judgment aforesaid," and to be sold by a trustee appointed by the court, and new certificates issued by the gas company to the purchasers; and for further relief.

One of the daughters demurred to the bill, because it showed that the plaintiff's claim was for the recovery of a penalty against Attrill arising under a statute of the State of New York, and because it did not state a case which entitled the plaintiff to any relief in a court of equity in the State of Maryland.

By a stipulation of counsel, filed in the cause, it was agreed that, for the purposes of the demurrer, the bill should be treated as embodying the New York statute of June 21, 1875; and that the Rockaway Beach Improvement Company, Limited, was incorporated under the provisions of that statute.

The Circuit Court of Baltimore City overruled the demurrer. On appeal to the Court of Appeals of the State of Maryland, the order was reversed, and the bill dismissed. 70 Maryland, 191.

The ground most prominently brought forward and most fully discussed in the opinion of the majority of the court, delivered by Judge Bryan, was that the liability imposed by section 21 of the statute of New York upon officers of a corporation, making a false certificate of its condition, was for all its debts, without inquiring whether a creditor had been deceived and induced by deception to lend his money or to give credit, or whether he had incurred loss to any extent by the inability of the corporation to pay, and without limiting the recovery to the amount of loss sustained, and was intended as a punishment for doing any of the forbidden acts, and was, therefore, in view of the decisions in that State and in Maryland, a penalty which could not be enforced in the State of Maryland; and that the judgment obtained in New York for this penalty, while it "merged the original cause of action so that a suit cannot be again maintained upon it," and "is also

conclusive evidence of its existence in the form and under the circumstances stated in the pleadings," yet did not change the nature of the transaction, but, within the decision of this court in *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, was in its "essential nature and real foundation" the same as the original cause of action, and therefore a suit could not be maintained upon such a judgment beyond the limits of the State in which it was rendered. pp. 193–198.

The court then took up the clause of the bill, above quoted, in which it was sought to charge Attrill as originally liable under the statute of New York, both as a stockholder and as a director; and observing that "this liability is asserted to exist independently of the judgment," summarily disposed of it, upon the grounds that it could not attach to him as a stockholder, because he had not been sued, as required by the New York statute, within two years after the plaintiff's debt became due; nor as a director, because "the judgment against Attrill for having made the false report certainly merges all right of action against him on this account;" but that, if he was liable at the times and on the grounds "mentioned in this clause of the bill," this liability was barred by the statute of limitations of Maryland. pp. 198, 199.

Having thus decided against the plaintiff's claim under his judgment, upon the single ground that it was for a penalty under the statute of New York, and therefore could not be enforced in Maryland; and against any original liability under the statute, for various reasons; the opinion concluded: "Upon the whole, it appears to us that the complainant has no cause of action, which he can maintain in this State." p. 199.

Judge Stone, with whom Judge McSherry concurred, dissented from the opinion of the majority of the court, upon the ground that it did not give due effect to the act of Congress, passed in pursuance of the Constitution of the United States, and providing that the records of judgments rendered by a court of any State shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State whence they are taken. Act of May 26, 1790, c. 11, 1 Stat. 122; Rev. Stat.

§ 905. He began his opinion by saying: "I look upon the principal point as a Federal question, and am governed in my views more by my understanding of the decisions of the Supreme Court of the United States than by the decisions of the state courts." And he concluded thus: "I think the Supreme Court, in 127 U. S., meant to confine the operation of the rule that no country will execute the penal laws of another to such laws as are properly classed as criminal. It is not very easy to give any brief definition of a criminal law. It may perhaps be enough to say that, in general, all breaches of duty that confer no rights upon an individual or person, and which the State alone can take cognizance of, are in their nature criminal, and that all such come within the rule. But laws which, while imposing a duty, at the same time confer a right upon the citizens to claim damages for its nonperformance, are not criminal. If all the laws of the latter description are held penal in the sense of criminal, that clause in the Constitution which relates to records and judgments is of comparatively little value. There is a large, and constantly increasing, number of cases that may in one sense be termed penal, but can in no sense be classed as criminal. Examples of these may be found in suits for damages for negligence in causing death, for double damages for the injury to stock where railroads have neglected the state laws for fencing in their tracks, and the liability of officers of corporations for the debts of the company by reason of their neglect of a plain duty imposed by statute. I cannot think that judgments on such claims are not within the protection given by the Constitution of the United States. I therefore think the order in this case should be affirmed." pp. 200–205.

A writ of error was sued out by the plaintiff, and allowed by the Chief Justice of the Court of Appeals of Maryland, upon the ground "that the said Court of Appeals is the highest court of law or equity in the State of Maryland, in which a decision in the said suit could be had; that in said suit a right and privilege are claimed under the Constitution and statutes of the United States, and the decision is against the right and privilege set up and claimed by your petitioner

under said Constitution and statutes; and that in said suit there is drawn in question the validity of a statute of and an authority exercised under the United States, and the decision is against the validity of such statute and of such authority."

It thus appears that the judgment recovered in New York was made the foremost ground of the bill, was fully discussed and distinctly passed upon by the majority of the Court of Appeals of Maryland, and was the only subject of the dissenting opinion; and that the court, without considering whether the validity of the transfers impeached as fraudulent was to be governed by the law of New York, or by the law of Maryland; and without a suggestion that those transfers, alleged to have been made by Attrill with intent to delay, hinder and defraud all his creditors, were not voidable by subsequent, as well as by existing creditors, or that they could not be avoided by the plaintiff, claiming under the judgment recovered by him against Attrill after those transfers were made; declined to maintain his right to do so by virtue of that judgment, simply because the judgment had, as the court held, been recovered in another State in an action for a penalty.

The question whether due faith and credit were thereby denied to the judgment rendered in another State is a Federal question, of which this court has jurisdiction on this writ of error. *Green* v. *Van Buskirk*, 5 Wall. 307, 311; *Crapo* v. *Kelly*, 16 Wall. 610, 619; *Dupasseur* v. *Rochereau*, 21 Wall. 130, 134; *Crescent City Co.* v. *Butchers' Union*, 120 U. S. 141, 146, 147; *Cole* v. *Cunningham*, 133 U. S. 107; *Carpenter* v. *Strange*, 141 U. S. 87, 103.

In order to determine this question, it will be necessary, in the first place, to consider the true scope and meaning of the fundamental maxim of international law, stated by Chief Justice Marshall in the fewest possible words: "The courts of no country execute the penal laws of another." *The Antelope*, 10 Wheat. 66, 123. In interpreting this maxim, there is danger of being misled by the different shades of meaning allowed to the word "penal" in our language.

In the municipal law of England and America, the words

"penal" and "penalty" have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offence against its laws. *United States* v. *Reisinger*, 128 U. S. 398, 402; *United States* v. *Chouteau*, 102 U. S. 603, 611. But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. They are so elastic in meaning as even to be familiarly applied to cases of private contracts, wholly independent of statutes, as when we speak of the "penal sum" or "penalty" of a bond. In the words of Chief Justice Marshall: "In general, a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages which the party, in whose favor the stipulation is made, may have sustained from the breach of contract by the opposite party." *Tayloe* v. *Sandiford*, 7 Wheat. 13, 17.

Penal laws, strictly and properly, are those imposing punishment for an offence committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.

The action of an owner of property against the hundred to recover damages caused by a mob was said by Justices Willes and Buller to be "penal against the hundred, but certainly remedial as to the sufferer." *Hyde* v. *Cogan*, 2 Doug. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a *qui tam* action to be brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer *Bones* v. *Booth*, 2 W. Bl. 1226; *Brandon* v. *Pate*, 2 H. Bl. 308; *Grace* v. *M'Elroy*, 1 Allen, 563; *Read* v. *Stewart*, 129 Mass. 407, 410; *Cole* v. *Groves*, 134 Mass. 471. As said

by Mr. Justice Ashhurst in the King's Bench, and repeated by Mr. Justice Wilde in the Supreme Judicial Court of Massachusetts, "it has been held, in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action." *Woodgate* v. *Knatchbull*, 2 T. R. 148, 154; *Read* v. *Chelmsford*, 16 Pick. 128, 132. Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the landlord, has been held to be "not like a penal law where a punishment is imposed for a crime," but "rather as a remedial than a penal law," because "the act indeed does give a penalty, but it is to the party grieved." *Lake* v. *Smith*, 1 Bos. & Pul. (N. R.) 174, 179, 180, 181; *Wilkinson* v. *Colley*, 5 Burrow, 2694, 2698. So in an action given by statute to a traveller injured through a defect in a highway, for double damages against the town, it was held unnecessary to aver that the facts constituted an offence, or to conclude against the form of the statute, because, as Chief Justice Shaw said: "The action is purely remedial, and has none of the characteristics of a penal prosecution. All damages for neglect or breach of duty operate to a certain extent as punishment; but the distinction is that it is prosecuted for the purpose of punishment, and to deter others from offending in like manner. Here the plaintiff sets out the liability of the town to repair, and an injury to himself from a failure to perform that duty. The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity." *Reed* v. *Northfield*, 13 Pick. 94, 100, 101.

The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual, according to the familiar classification of Blackstone: "Wrongs are divisible into two sorts or species: *private wrongs* and *public wrongs.* The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals; and are thereupon frequently termed *civil injuries:* the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community; and

are distinguished by the harsher appellation of *crimes* and *misdemeanors.*" 3 Bl. Com. 2.

Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States. The general rules of international comity upon this subject were well summed up, before the American Revolution, by Chief Justice De Grey, as reported by Sir William Blackstone: "Crimes are in their nature local, and the jurisdiction of crimes is local. And so as to the rights of real property, the subject being fixed and immovable. But personal injuries are of a transitory nature, and *sequuntur forum rei.*" *Rafael* v. *Verelst*, 2 W. Bl. 1055, 1058.

Crimes and offences against the laws of any State can only be defined, prosecuted and pardoned by the sovereign authority of that State; and the authorities, legislative, executive or judicial, of other States take no action with regard to them, except by way of extradition to surrender offenders to the State whose laws they have violated, and whose peace they have broken.

Proceedings *in rem* to determine the title to land must necessarily be brought in the State within whose borders the land is situated, and whose courts and officers alone can put the party in possession. Whether actions to recover pecuniary damages for trespasses to real estate, "of which the causes," as observed by Mr. Westlake (Private International Law, 3d ed. p. 213), "could not have occurred elsewhere than where they did occur," are purely local, or may be brought abroad, depends upon the question whether they are viewed as relating to the real estate, or only as affording a personal remedy. By the common law of England, adopted in most of the States of the Union, such actions are regarded as local, and can be brought only where the land is situated. *Doulson* v. *Matthews*, 4 T. R. 503; *McKenna* v. *Fisk*, 1 How. 241, 248. But in some States and countries they are regarded as transitory, like other personal actions; and whether an action for trespass to land in one State can be brought in another State depends on the view which the latter State takes of the

nature of the action. For instance, Chief Justice Marshall held that an action could not be maintained in Virginia, by whose law it was local, for a trespass to land in New Orleans. *Livingston* v. *Jefferson*, 1 Brock. 203. On the other hand, an action for a trespass to land in Illinois, where the rule of the common law prevailed, was maintained in Louisiana, Chief Justice Eustis saying: "The present action is, under our laws, a personal action, and is not distinguished from any ordinary civil action as to the place or tribunal in which it may be brought." *Holmes* v. *Barclay*, 4 La. Ann. 63. And in a very recent English case, in which the judges differed in opinion upon the question whether, since local venue has been abolished in England, an action can be maintained there for a trespass to land in a foreign country, all agreed that this question depended on the law of England. *Companhia de Mocambique* v. *British South Africa Co.* (1892) 2 Q. B. 358. See also *Cragin* v. *Lovell*, 88 N. Y. 258; *Allin* v. *Connecticut River Lumber Co.*, 150 Mass. 560.

In order to maintain an action for an injury to the person or to movable property, some courts have held that the wrong must be one which would be actionable by the law of the place where the redress is sought, as well as by the law of the place where the wrong was done. See, for example, *The Halley*, L. R. 2 P. C. 193, 204; *Phillips* v. *Eyre*, L. R. 6 Q. B. 1, 28, 29; *The M. Moxham*, 1 P. D. 107, 111; *Wooden* v. *Western New York & Pennsylvania Railroad*, 126 N. Y. 10; *Ash* v. *Baltimore & Ohio Railroad*, 72 Maryland, 144. But such is not the law of this court. By our law, a private action may be maintained in one State, if not contrary to its own policy, for such a wrong done in another and actionable there, although a like wrong would not be actionable in the State where the suit is brought. *Smith* v. *Condry*, 1 How. 28; *The China*, 7 Wall. 53, 64; *The Scotland*, 105 U. S. 24, 29; *Dennick* v. *Railroad Co.*, 103 U. S. 11; *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593.

Upon the question what are to be considered penal laws of one country, within the international rule which forbids such laws to be enforced in any other country, so much reliance

was placed by each party in argument upon the opinion of this court in *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, that it will be convenient to quote from that opinion the principal propositions there affirmed:

"The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties." p. 290.

"The application of the rule to the courts of the several States and of the United States is not affected by the provisions of the Constitution and of the act of Congress, by which the judgments of the courts of any State are to have such faith and credit given to them in every court within the United States as they have by law or usage in the State in which they were rendered." p. 291.

"The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules, which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action, (while it cannot go behind the judgment for the purpose of examining into the validity of the claim,) from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it." pp. 292, 293.

"The statute of Wisconsin, under which the State recovered in one of her own courts the judgment now and here sued on, was in the strictest sense a penal statute, imposing a penalty upon any insurance company of another State, doing business in the State of Wisconsin without having deposited with the proper officer of the State a full statement of its property and business during the previous year. The cause of action was not any private injury, but solely the offence committed against the State by violating her law. The prosecution was in the name of the State, and the whole penalty, when recovered, would accrue to the State." p. 299.

.Such were the grounds upon which it was adjudged in that case that this court, under the provision of the Constitution giving it original jurisdiction of actions between a State and · citizens of another State, had no jurisdiction of an action by a State upon a judgment recovered by it in one of its own courts against a citizen or a corporation of another State for a pecuniary penalty for a violation of its municipal law.

Upon similar grounds, the courts of a State cannot be compelled to take jurisdiction of a suit to recover a like penalty for a violation of a law of the United States. *Martin* v. *Hunter*, 1 Wheat. 304, 330, 337; *United States* v. *Lathrop*, 17 Johns. 4, 265; *Delafield* v. *Illinois*, 2 Hill (N. Y.) 159, 169; *Jackson* v. *Rose*, 2 Virg. Cas. 34; *Ely* v. *Peck*, 7 Conn. 239; *Davison* v. *Champlin*, 7 Conn. 244; *Haney* v. *Sharp*, 1 Dana, 442; *State* v. *Pike*, 15 N. H. 83, 85; *Ward* v. *Jenkins*, 10 Met. 583, 587; 1 Kent Com. 402–404. The only ground ever suggested for maintaining such suits in a state court is that the laws of the United States are in effect laws of each State. *Claflin* v. *Houseman*, 93 U. S. 130, 137; Platt, J., in *United States* v. *Lathrop*, 17 Johns. 22; *Ordway* v. *Central Bank*, 47 Maryland, 217. But in *Claflin* v. *Houseman* the point adjudged was that an assignee under the bankrupt law of the United States could assert in a state court the title vested in him by the assignment in bankruptcy; and Mr. Justice Bradley, who delivered the opinion in that case, said the year before, when sitting in the Circuit Court, and speaking of a prosecution in a court of the State of Georgia for perjury committed in that State in testifying before a commissioner of the Circuit Court of the United States, "It would be a manifest incongruity for one sovereignty to punish a person for an offence committed against the laws of another sovereignty." *Ex parte Bridges*, 2 Woods, 428, 430. See also *Loney's case*, 134 U. S. 372.

Beyond doubt, (except in cases removed from a state court in obedience to an express act of Congress in ·order to protect rights under the Constitution and laws of the United States,) a Circuit Court of the United States cannot entertain jurisdiction of a suit in behalf of the State, or of the people thereof,

to recover a penalty imposed by way of punishment for a violation of a statute of the State, "the courts of the United States," as observed by Mr. Justice Catron, delivering a judgment of this court, "having no power to execute the penal laws of the individual States." *Gwin* v. *Breedlove,* 2 How. 29, 36, 37; *Gwin* v. *Barton,* 6 How. 7; *Iowa* v. *Chicago &c. Railway,* 37 Fed. Rep. 497; *Ferguson* v. *Ross,* 38 Fed. Rep. 161; *Texas* v. *Day Land & Cattle Co.,* 41 Fed. Rep. 228; *Dey* v. *Chicago &c. Railway,* 45 Fed. Rep. 82.

For the purposes of extra-territorial jurisdiction, it may well be that actions by a common informer, called, as Blackstone says, "popular actions, because they are given to the people in general," to recover a penalty imposed by statute for an offence against the law, and which may be barred by a pardon granted before action brought, may stand on the same ground as suits brought for such a penalty in the name of the State or of its officers, because they are equally brought to enforce the criminal law of the State. 3 Bl. Com. 161, 162; 2 Bl. Com. 437, 438; *Adams* v. *Woods,* 2 Cranch, 336; *Gwin* v. *Breedlove,* above cited; *United States* v. *Connor,* 138 U. S. 61, 66; *Bryant* v. *Ela,* Smith (N. H.) 396. And personal disabilities imposed by the law of a State, as an incident or consequence of a judicial sentence or decree, by way of punishment of an offender, and not for the benefit of any other person — such as attainder, or infamy, or incompetency of a convict to testify, or disqualification of the guilty party to a cause of divorce for adultery to marry again — are doubtless strictly penal, and therefore have no extra-territorial operation. Story on Conflict of Laws, §§ 91, 92; Dicey on Domicil, 162; *Folliott* v. *Ogden,* 1 H. Bl. 123, and 3 T. R. 726; *Logan* v. *United States,* 144 U. S. 263, 303; *Dickson* v. *Dickson,* 1 Yerger, 110; *Ponsford* v. *Johnson,* 2 Blatchford, 15; *Commonwealth* v. *Lane,* 113 Mass. 458, 471; *Van Voorhis* v. *Brintnall,* 86 N. Y. 18, 28, 29.

The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to

punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act. There could be no better illustration of this than the decision of this court in *Dennick* v. *Railroad Co.*, 103 U. S. 11.

In that case, it was held that, by virtue of a statute of New Jersey making a person or corporation, whose wrongful act, neglect or default should cause the death of any person, liable to an action by his administrator, for the benefit of his widow and next of kin, to recover damages for the pecuniary injury resulting to them from his death, such an action, where the neglect and the death took place in New Jersey, might, upon general principles of law, be maintained in a Circuit Court of the United States held in the State of New York by an administrator of the deceased, appointed in that State.

Mr. Justice Miller, in delivering judgment, said: "It can scarcely be contended that the act belongs to the class of criminal laws which can only be enforced by the courts of the State where the offence was committed, for it is, though a statutory remedy, a civil action to recover damages for a civil injury. It is, indeed, a right dependent solely on the statute of the State; but when the act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal and not a real action, and is of that character which the law recognizes as transitory and not local, we cannot see why the defendant may not be held liable in any court to whose jurisdiction he can be subjected by personal process or by voluntary appearance, as was the case here. It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory right or a common law right. Wherever, by either the common law or the statute law of a State, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties." 103 U. S. 17, 18.

That decision is important as establishing two points: 1st. The court considered "criminal laws," that is to say, laws

punishing crimes, as constituting the whole class of penal laws which cannot be enforced extra-territorially. 2d. A statute of a State, manifestly intended to protect life, and to impose a new and extraordinary civil liability upon those causing death, by subjecting them to a private action for the pecuniary damages thereby resulting to the family of the deceased, might be enforced in a Circuit Court of the United States held in another State, without regard to the question whether a similar liability would have attached for a similar cause in that State. The decision was approved and followed at the last term in *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593, 605, where the Chief Justice, speaking for the whole court, after alluding to cases recognizing the rule where the laws of both jurisdictions are similar, said: "The question, however, is one of general law, and we regard it as settled in *Dennick* v. *Railroad Co.*"

That decision has been also followed in the courts of several States. *Herrick* v. *Minneapolis & St. Louis Railway*, 31 Minnesota, 11; *Chicago &c. Railroad* v. *Doyle*, 60 Mississippi, 977; *Knight* v. *West Jersey Railroad*, 108 Penn. St. 250; *Morris* v. *Chicago &c. Railway*, 65 Iowa, 727; *Missouri Pacific Railway* v. *Lewis*, 24 Nebraska, 848; *Higgins* v. *Central New England Railroad*, 155 Mass. 176.

In the case last cited, a statute of Connecticut having provided that all actions for injuries to the person, including those resulting instantaneously or otherwise in death, should survive; and that for an injury resulting in death from negligence the executor or administrator of the deceased might maintain an action to recover damages not exceeding $5000, to be distributed among his widow and heirs in certain proportions; it was held that such an action was not a penal action, and might be maintained under that statute in Massachusetts by an administrator, appointed there, of a citizen thereof, who had been instantly killed in Connecticut by the negligence of a railroad corporation; and the general principles applicable to the case were carefully stated as follows: "These principles require that, in cases of other than penal actions, the foreign law, if not contrary to our public policy, or to abstract justice or pure morals, or calculated to injure the State or its citizens, shall

be recognized and enforced here, if we have jurisdiction of all necessary parties, and if we can see that, consistently with our own forms of procedure and law of trials, we can do substantial justice between the parties. If the foreign law is a penal statute, or if it offends our own policy, or is repugnant to justice or to good morals, or is calculated to injure this State or its citizens, or if we have not jurisdiction of parties who must be brought in to enable us to give a satisfactory remedy, or if under our forms of procedure an action here cannot give a substantial remedy, we are at liberty to decline jurisdiction." 155 Mass. 180.

The provision of the statute of New York, now in question, making the officers of a corporation, who sign and record a false certificate of the amount of its capital stock, liable for all its debts, is in no sense a criminal or *quasi* criminal law. The statute, while it enables persons complying with its provisions to do business as a corporation, without being subject to the liability of general partners, takes pains to secure and maintain a proper corporate fund for the payment of the corporate debts. With this aim, it makes the stockholders individually liable for the debts of the corporation until the capital stock is paid in and a certificate of the payment made by the officers; and makes the officers liable for any false and material representation in that certificate. The individual liability of the stockholders takes the place of a corporate fund, until that fund has been duly created; and the individual liability of the officers takes the place of the fund, in case their statement that it has been duly created is false. If the officers do not truly state and record the facts which exempt them from liability, they are made liable directly to every creditor of the company, who by reason of their wrongful acts has not the security, for the payment of his debt out of the corporate property, on which he had a right to rely. As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against

the State, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it cannot be enforced in a foreign state or country.

The decisions of the Court of Appeals of New York, so far as they have been brought to our notice, fall short of holding that the liability imposed upon the officers of the corporation by such statutes is a punishment or penalty which cannot be enforced in another State.

In *Garrison* v. *Howe*, the court held that the statute was so far penal that it must be construed strictly, and therefore the officers could not be charged with a debt of the corporation, which was neither contracted nor existing during a default in making the report required by the statute; and Chief Justice Denio, in delivering judgment, said: "If the statute were simply a remedial one, it might be said that the plaintiff's case was within its equity; for the general object of the law doubtless was, beside enforcing the duty of making reports for the benefit of all concerned, to enable parties proposing to deal with the corporation to see whether they could safely do so." "But the provision is highly penal, and the rules of law do not permit us to extend it by construction to cases not fairly within the language." 17 N. Y. 458, 465, 466.

In *Jones* v. *Barlow*, it was accordingly held that officers were only liable for debts actually due, and for which a present right of action exists against the corporation; and the court said: "Although the obligation is wholly statutory, and adjudged to be a penalty, it is in substance, as it is in form, a remedy for the collection of the corporate debts. The act is penal as against the defaulting trustees, but is remedial in favor of creditors. The liability of defaulting trustees is measured by the obligation of the company, and a discharge of the obligations of the company, or a release of the debt, bars the action against the trustees." 62 N. Y. 202, 205, 206.

The other cases in that court, cited in the opinion of the Court of Appeals of Maryland in the present case, adjudged only the following points: Within the meaning of a statute of limitations applicable to private actions only, the action against an

officer is not "upon a liability created by statute, other than a penalty or forfeiture," which would be barred in six years, but is barred in three years as "an action upon a statute for a penalty or forfeiture where action is given to the party aggrieved," because the provisions in question, said the court, "impose a penalty, or a liability in that nature." *Merchants' Bank* v. *Bliss,* 35 N. Y. 412, 417. A count against a person as an officer for not filing a report cannot be joined with one against him as a stockholder for debts contracted before a report is filed, that being "an action on contract." *Wiles* v. *Suydam,* 64 N. Y. 173, 176. The action against an officer is an action *ex delicto,* and therefore does not survive against his personal representatives. *Stokes* v. *Stickney,* 96 N. Y. 323.

In a later case than any of these, the court, in affirming the very judgment now sued on, and adjudging the statute of 1875 to be constitutional and valid, said that "while liability within the provision in question is in some sense penal in its character, it may have been intended for the protection of creditors of corporations created pursuant to that statute." *Huntington* v. *Attrill,* 118 N. Y. 365, 378. And where such an action against an officer went to judgment before the death of either party, it was decided that "the original wrong was merged in the judgment, and that thus became property with all the attributes of a judgment in an action *ex contractu;* " and that if, after a reversal of judgment for the plaintiff, both parties died, the plaintiff's representatives might maintain an appeal from the judgment of reversal, and have the defendant's representatives summoned in. *Carr* v. *Rischer,* 119 N. Y. 117, 124.

We do not refer to these decisions as evidence in this case of the law of New York, because in the courts of Maryland that law could only be proved as a fact, and was hardly open to proof on the demurrer, and, if not proved in those courts, could not be taken judicial notice of by this court on this writ of error. *Hanley* v. *Donoghue,* 116 U. S. 1; *Chicago & Alton Railroad* v. *Wiggins Ferry,* 119 U. S. 615; *Wernwag,* v. *Pawling,* 5 Gill & Johns. 500, 508; *Coates* v. *Mackey,* 56

Maryland, 416, 419. Nor, for reasons to be stated presently, could those decisions, in any view, be regarded as concluding the courts of Maryland, or this court, upon the question whether this statute is a penal law in the international sense. But they are entitled to great consideration, because made by a court of high authority, construing the terms of a statute with which it was peculiarly familiar; and it is satisfactory to find no adjudication of that court inconsistent with the view which we take of the liability in question.

That court and some others, indeed, have held that the liability of officers under such a statute is so far in the nature of a penalty, that the creditors of the corporation have no vested right therein, which cannot be taken away by a repeal of the statute before judgment in an action brought thereon. *Victory Co.* v. *Beecher*, 97 N. Y. 651, and 26 Hun, 48; *Union Iron Co.* v. *Pierce*, 4 Bissell, 327; *Breitung* v. *Lindauer*, 37 Michigan, 217, 230; *Gregory* v. *German Bank*, 3 Colorado, 332. But whether that is so, or whether, within the decision of this court in *Hawthorne* v. *Calef*, 2 Wall. 10, 23, such a repeal so affects the security which the creditor had when his debt was contracted, as to impair the obligation of his contract with the corporation, is aside from the question now before us.

It is true that the courts of some States, including Maryland, have declined to enforce a similar liability imposed by the statute of another State. But, in each of those cases, it appears to have been assumed to be a sufficient ground for that conclusion, that the liability was not founded in contract, but was in the nature of a penalty imposed by statute; and no reasons were given for considering the statute a penal law in the strict, primary and international sense. *Derrickson* v. *Smith*, 3 Dutcher (27 N. J. Law), 166; *Halsey* v. *McLean*, 12 Allen, 438; *First National Bank* v. *Price*, 33 Maryland, 487.

It is also true that in *Steam Engine Co.* v. *Hubbard*, 101 U. S. 188, 192, Mr. Justice Clifford referred to those cases by way of argument. But in that case, as well as in *Chase* v. *Curtis*, 113 U. S. 452, the only point adjudged was that such statutes were so far penal that they must be construed

strictly; and in both cases jurisdiction was assumed by the Circuit Court of the United States, and not doubted by this court, which could hardly have been if the statute had been deemed penal within the maxim of international law. In *Flash* v. *Conn*, 109 U. S. 371, the liability sought to be enforced under the statute of New York was the liability of a stockholder arising upon contract; and no question was presented as to the nature of the liability of officers.

But in *Hornor* v. *Henning*, 93 U. S. 228, this court declined to consider a similar liability of officers of a corporation in the District of Columbia as a penalty. See also *Neal* v. *Moultrie*, 12 Georgia, 104; *Cady* v. *Sanford*, 53 Vermont, 632, 639, 640; *Nickerson* v. *Wheeler*, 118 Mass. 295, 298; *Post* v. *Toledo &c. Railroad*, 144 Mass. 341, 345; *Woolverton* v. *Taylor*, 132 Illinois, 197; Morawetz on Corporations (2d ed.) § 908.

The case of *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, on which the defendant much relied, related only to the authority of the legislature of a State to compel railroad corporations, neglecting to provide fences and cattle-guards on the lines of their roads, to pay double damages to the owners of cattle injured by reason of the neglect; and no question of the jurisdiction of the courts of another State to maintain an action for such damages was involved in the case, suggested by counsel, or in the mind of the court.

The true limits of the international rule are well stated in the decision of the Judicial Committee of the Privy Council of England, upon an appeal from Canada, in an action brought by the present plaintiff against Attrill in the Province of Ontario upon the judgment to enforce which the present suit was brought. The Canadian judges, having in evidence before them some of the cases in the Court of Appeals of New York, above referred to, as well as the testimony of a well known lawyer of New York that such statutes were, and had been held by that court to be, strictly penal and punitive, differed in opinion upon the question whether the statute of New York was a penal law which could not be enforced in another country, as well as upon the question whether the view taken by

the courts of New York should be conclusive upon foreign courts, and finally gave judgment for the defendant. *Huntington* v. *Attrill,* 17 Ontario, 245, and 18 Ontario App. 136.

In the Privy Council, Lord Watson, speaking for Lord Chancellor Halsbury and other judges, as well as for himself, delivered an opinion in favor of reversing the judgment below, and entering a decree for the appellant, upon the ground that the action " was not, in the sense of international law, penal, or, in other words, an action on behalf of the government or community of the State of New York for punishment of an offence against their municipal law." The fact that that opinion has not been found in any series of reports readily accessible in this country, but only in 8 Times Law Reports, 341, affords special reasons for quoting some passages.

" The rule " of international law, said Lord Watson, " had its foundation in the well recognized principle that crimes, including in that term all breaches of public law punishable by pecuniary mulct or otherwise, at the instance of the state government, or of some one representing the public, were local in this sense, that they were only cognizable and punishable in the country where they were committed. Accordingly no proceeding, even in the shape of a civil suit, which had for its object the enforcement by the State, whether directly or indirectly, of punishment imposed for such breaches by the *lex loci,* ought to be admitted in the courts of any other country. In its ordinary acceptation, the word 'penal' might embrace penalties for infractions of general law, which did not constitute offences against the State; it might, for many legal purposes, be applied with perfect propriety to penalties created by contract; and it, therefore, when taken by itself, failed to mark that distinction between civil rights and criminal wrongs, which was the very essence of the international rule." ·

After observing that, in the opinion of the Judicial Committee, the first passage above quoted from *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, 290, " disclosed the proper test for ascertaining whether an action was penal within the meaning of the rule," he added: " A proceeding, in order to come within the scope of the rule, must be in the nature of a suit in

favor of the State whose law had been infringed. All the provisions of municipal statutes for the regulation of trade and trading companies were presumably enacted in the interest and for the benefit of the community at large; and persons who violated those provisions were, in a certain sense, offenders against the state law as well as against individuals who might be injured by their misconduct. But foreign tribunals did not regard those violations of statute law as offences against the State, unless their vindication rested with the State itself or with the community which it represented. Penalties might be attached to them, but that circumstance would not bring them within the rule, except in cases where those penalties were recoverable at the instance of the State, or of an official duly authorized to prosecute on its behalf, or of a member of the public in the character of a common informer. An action by the latter was regarded as an *actio popularis* pursued, not in his individual interest, but in the interest of the whole community."

He had already, in an earlier part of the opinion, observed: " Their lordships could not assent to the proposition that, in considering whether the present action was penal in such sense as to oust their jurisdiction, the courts of Ontario were bound to pay absolute deference to any interpretation which might have been put upon the statute of 1875 in the State of New York. They had to construe and apply an international rule, which was a matter of law entirely within the cognizance of the foreign court whose jurisdiction was invoked. Judicial decisions in the State where the cause of action arose were not precedents which must be followed, although the reasoning upon which they were founded must always receive careful consideration and might be conclusive. The court appealed to must determine for itself, in the first place, the substance of the right sought to be enforced, and, in the second place, whether its enforcement would, either directly or indirectly, involve the execution of the penal law of another State. Were any other principle to guide its decision, a court might find itself in the position of giving effect in one case, and denying effect in another, to suits of the same character, in consequence

of the causes of action having arisen in different countries; or in the predicament of being constrained to give effect to laws which were, in its own judgment, strictly penal."

In this view that the question is not one of local, but of international law, we fully concur. The test is not by what name the statute is called by the legislature or the courts of the State in which it was passed, but whether it appears to the tribunal which is called upon to enforce it to be, in its essential character and effect, a punishment of an offence against the public, or a grant of a civil right to a private person.

In this country, the question of international law must be determined in the first instance by the court, state or national, in which the suit is brought. If the suit is brought in a Circuit Court of the United States, it is one of those questions of general jurisprudence which that court must decide for itself, uncontrolled by local decisions. *Burgess* v. *Seligman*, 107 U. S. 20, 33; *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593, 605, above cited. If a suit on the original liability under the statute of one State is brought in a court of another State, the Constitution and laws of the United States have not authorized its decision upon such a question to be reviewed by this court. *New York Ins. Co.* v. *Hendren*, 92 U. S. 286 ; *Roth* v. *Ehman*, 107 U. S. 319. But if the original liability has passed into judgment in one State, the courts of another State, when asked to enforce it, are bound by the Constitution and laws of the United States to give full faith and credit to that judgment, and if they do not, their decision, as said at the outset of this opinion, may be reviewed and reversed by this court on writ of error. The essential nature and real foundation of a cause of action, indeed, are not changed by recovering judgment upon it. This was directly adjudged in *Wisconsin* v. *Pelican Ins. Co.*, above cited. The difference is only in the appellate jurisdiction of this court in the one case or in the other.

If a suit to enforce a judgment rendered in one State, and which has not changed the essential nature of the liability, is brought in the courts of another State, this court, in order to determine, on writ of error, whether the highest court of the latter State has given full faith and credit to the judgment,

must determine for itself whether the original cause of action is penal in the international sense. The case, in this regard, is analogous to one arising under the clause of the Constitution which forbids a State to pass any law impairing the obliga- tion of contracts, in which, if the highest court of a State decides nothing but the original construction and obligation of a contract, this court has no jurisdiction to review its deci- sion ; but if the state court gives effect to a subsequent law, which is impugned as impairing the obligation of a contract, this court has power, in order to determine whether any con- tract has been impaired, to decide for itself what the true construction of the contract is. *New Orleans Waterworks* v. *Louisiana Sugar Co.*, 125 U. S. 18, 38. So if the state court, in an action to enforce the original liability under the law of another State, passes upon the nature of that liability and nothing else, this court cannot: review its decision; but if the state court declines to give full faith and credit to a judgment of another State, because of its opinion as to the nature of the cause of action on which the judgment was recovered, this court, in determining whether full faith and credit have been given to that judgment, must decide for itself the nature of the original liability.

Whether the Court of Appeals of Maryland gave full faith and credit to the judgment recovered by this plaintiff in New York depends upon the true construction of the provisions of the Constitution and of the act of Congress upon that subject.

The provision of the Constitution is as follows: "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." Art. 4, sect. 1.

This clause of the Constitution, like the less perfect pro- vision on the subject in the Articles of Confederation, as observed by Mr. Justice Story, "was intended to give the same conclusive effect to judgments of all the States, so as to promote uniformity, as well as certainty, in the rule among them ;" and had three distinct objects : first, to declare, and

by its own force establish, that full faith and credit should be given to the judgments of every other State; second, to authorize Congress to prescribe the manner of authenticating them; and third, to authorize Congress to prescribe their effect when so authenticated. Story on the Constitution, §§ 1307, 1308.

Congress, in the exercise of the power so conferred, besides prescribing the manner in which the records and judicial proceedings of any State may be authenticated, has defined the effect thereof, by enacting that " the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from which they are taken." Rev. Stat. § 905, reënacting Act of May 26, 1790, c. 11, 1 Stat. 122.

These provisions of the Constitution and laws of the United States are necessarily to be read in the light of some established principles, which they were not intended to overthrow. They give no effect to judgments of a court which had no jurisdiction of the subject-matter or of the parties. *D'Arcy* v. *Ketchum*, 11 How. 165; *Thompson* v. *Whitman*, 18 Wall. 457. And they confer no new jurisdiction on the courts of any State; and therefore do not authorize them to take jurisdiction of a suit or prosecution of such a penal nature, that it cannot, on settled rules of public and international law, be entertained by the judiciary of any other State than that in which the penalty was incurred. *Wisconsin* v. *Pelican Ins. Co.*, above cited.

Nor do these provisions put the judgments of other States upon the footing of domestic judgments, to be enforced by execution; but they leave the manner in which they may be enforced to the law of the State in which they are sued on, pleaded, or offered in evidence. *McElmoyle* v. *Cohen*, 13 Pet. 312, 325. But when duly pleaded and proved in a court of that State, they have the effect of being not merely *prima facie* evidence, but conclusive proof, of the rights thereby adjudicated; and a refusal to give them the force and effect, in this respect, which they had in the State in which they

were rendered, denies to the party a right secured to him by the Constitution and laws of the United States. *Christmas* v. *Russell*, 5 Wall. 290 ; *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139; *Insurance Co.* v. *Harris*, 97 U. S. 331, 336; *Crescent City Co.* v. *Butchers' Union*, 120 U. S. 141, 146, 147; *Carpenter* v. *Strange*, 141 U. S. 87.

The judgment rendered by a court of the State of New York, now in question, is not impugned for any want of jurisdiction in that court. The statute under which that judgment was recovered was not, for the reasons already stated at length, a penal law in the international sense. The faith and credit, force and effect, which that judgment had by law and usage in New York was to be conclusive evidence of a direct civil liability from the individual defendant to the individual plaintiff for a certain sum of money, and a debt of record, on which an action would lie, as on any other civil judgment *inter partes.* The Court of Appeals of Maryland, therefore, in deciding this case against the plaintiff, upon the ground that the judgment was not one which it was bound in any manner to enforce, denied to the judgment the full faith, credit and effect to which it was entitled under the Constitution and laws of the United States.

*Judgment reversed, and case remanded to the Court of Appeals of the State of Maryland for further proceedings not inconsistent with the opinion of this court.*

MR. CHIEF JUSTICE FULLER dissenting.

This suit was not an action at law to recover judgment in Maryland upon the judgment in New York, nor was it an ordinary creditor's bill brought by a creditor to reach equitable assets. The judgment and execution had no extra-territorial force, and Huntington was a judgment creditor in New York only. It was the bill of a creditor at large to set aside an alleged fraudulent transfer, judgment not being essential under the statute of Maryland in that behalf. It could not have been sustained at all but for that act, and it did not assume to proceed upon the theory that the transfer was invalid because

made with intent to defeat the collection of the judgment as such. The judgment of another State could not be made executory in Maryland either at law or in equity.

The ground of relief in this case was the charge that Attrill had transferred certain stock in April, 1882, with intent to hinder, delay and defraud the plaintiff of his lawful suits, debts and demands in respect of a liability of Attrill to him as a stockholder and as a director of the Rockaway Company, which accrued in 1880, upon the statute of New York, under which that company was organized. An action upon this liability, either as stockholder or director, was barred by the statute of limitations of Maryland, and so the Maryland court held. The judgment recovered in New York in 1886 by Huntington against Attrill upon the alleged liability as a director was, however, referred to and made part of the bill, and in this judgment that cause of action had been merged. And it was averred that the transfer was fraudulent as to the indebtedness arising "out of the cause of action on which the judgment hereinbefore recited has been recovered," which was set forth in detail.

The New York statute was made part of the pleading and admitted as a fact by the demurrer; and while the Maryland court held that the judgment was conclusive evidence of its existence in the form and under the circumstances stated in the pleadings, it regarded it as not changing the character of the liability upon which it was based. The record established the relation of debtor and creditor at the time stated and the amount and fact of the indebtedness, but nothing further.

As plaintiff had no judgment in Maryland, and had not sought to recover one, the pleader, in order to make out the alleged fraud as perpetrated in 1882, went into the original cause of action at large, and invited the attention of the court to its nature. The question at once arose whether the courts of Maryland were constrained to enforce such a cause of action, although record evidence of its maintenance in New York existed in the form of a judgment there. The court held that the liability was not one arising upon contract, but one imposed

upon Attrill as a wrongdoer; that under the statute no inquiry was to be made whether the creditor had been deceived and induced by deception to lend his money or to give credit, or whether he had incurred loss to any extent by the inability of the corporation to pay, nor was the recovery limited to the amount of the loss sustained ; that all that it was necessary to show was that the act had been committed, and thereupon any creditor was entitled to recover the full amount of his debt. See *Torbett* v. *Eaton*, 113 N. Y. 623; *S. C.* 49 Hun, 209; *Huntington* v. *Attrill*, 118 N. Y. 365. Hence the court concluded that the liability was in the nature of a penalty within the rule theretofore laid down by the courts of New York: *Merchants' Bank* v. *Bliss*, 35 N. Y. 412; *Wiles* v. *Suydam*, 64 N. Y. 173; *Stokes* v. *Stickney*, 96 N. Y. 323; *Chase* v. *Curtis*, 113 U. S. 452; *Flash* v. *Conn*, 109 U. S. 371; and by the courts of Maryland: *Bank* v. *Price*, 33 Maryland, 487; *Norris* v. *Wrenschall*, 34 Maryland, 492. Its enforcement was therefore declined, and the bill dismissed.

It was for the Maryland court to determine whether such enforcement would either directly or indirectly involve the execution of the penal laws of another State; and although it might have been mistaken in the conclusion arrived at, such error does not give this court jurisdiction to review its judgment. State courts do not adjudicate in the matter of the enforceability of statutory delicts at their peril.

In my opinion, the Maryland court gave all the force and effect to the judgment in question to which it was entitled. The pleadings were necessarily confined to the equities arising out of the original cause of action, and full faith and credit were accorded to the judgment as matter of evidence. Its effect as such could not render it incompetent for the state court to decide for itself the question which was raised upon the record. As there presented, it was for that court to say whether the obligation on Attrill to pay the sum for which the judgment was given was an obligation which the Maryland court was bound to recognize as proper foundation for relief in equity in respect of the transfer of April, 1882.

I think that no Federal question was involved, and that the writ of error ought to be dismissed.

MR. JUSTICE LAMAR and MR. JUSTICE SHIRAS, not having heard the argument, took no part in the decision of this case.