Per Curiam.

The record supports the finding of the court below that plaintiff, who had but recently become a retail stamp dealer and was not yet a member of the American Stamp Dealers Association, had innocently purchased certain stamp albums and immediately upon being advised of the notice in the association circular that they had been stolen and that a reward would be paid for their return, had notified the authorities and returned the albums to defendant owner. A purchaser, whose initial possession is not wrongful and who returns the stolen goods voluntarily and in reliance upon a promise to pay a reward, should be and is entitled to the reward (Sheldon v. George, 132 App. Div. 470). Sound social principles dictate that innocent purchasers be encouraged to return stolen property when they learn of the theft.
Cases involving finders of lost property, such as Rheinhauer v. De Krieges (188 Misc. 747), are inapplicable. In Rheinhauer the court, citing the Penal Law provision requiring a finder to *623 make every reasonable effort to find the owner and the Administrative Code of the City of New York provision requiring notice to be given by a finder to the police within 10 days, held that a finder, who keeps the lost property until he learns of a reward being offered, is not entitled to a reward for doing that which he was already obligated to do.
The judgment should be affirmed, with $25 costs.
Quinn, J. P. (dissenting). The plaintiff’s boyhood interest in stamp collecting was revived in 1952 and blossomed into some 12 or 13 years of buying and selling stamps as a collector before it reached full fruition in the purchase of the business of a stamp dealer in Miami, Florida, for $12,000 in 1965. With eight months’ experience as a stamp dealer to top off his earlier experience as a stamp collector (not to mention his independent experience as a contractor), plaintiff was offered the stolen stamp collection of defendant with a catalogue value (as proven on the trial) of at least $22,000. Plaintiff had no direct knowledge that the collection offered bim had been stolen. He accepted, without the slightest question, verification or identity-check, the story of the stranger who came to his shop at closing time on a rainy afternoon in October, 1965. The stranger told him his father had died in Europe and left him the stamp collection which he was anxious to dispose of, not having any interest in stamps, nor any knowledge of their value. Plaintiff, making no effort to consult the comprehensive stamp catalogue he had immediately to hand, offered the stranger $500, which the stranger snapped up with a counter demand of $550, compromised by plaintiff paying $525 for the first half of the stamp collection. The following day the stranger, as promised, returned with the second half of defendant’s stolen collection for which plaintiff paid bim an additional $650. In the overnight interim between the two purchases, plaintiff made no effort whatsoever to inquire, anywhere, about the stranger, or his vague tale of having come into possession of the several albums of the stamp collection by inheritance, and made no attempt to check the value of the ¡stamps he had purchased, except he recognized several of them as being worth a few hundred dollars.
There can be no doubt that plaintiff, without any direct knowledge or admitted suspicion that the $22,000 stamp collection for which he paid $1,175 had been stolen, acquired possession of the stamps for the single purpose and with the sole intent of benefiting himself by the profit to be realized from their resale as stock in trade of his stamp dealer’s business.
*624 In this suit plaintiff seeks to recover a reward offered, upon theft of the stamp collection, by defendant, the true owner, for its return; an offer of which plaintiff had no knowledge at the time he purchased the stamps from the thief. On the day his •purchases were concluded plaintiff consulted a neighboring, stamp dealer friend who examined the albums and next day phoned plaintiff the information that the stamp collection he had purchased from the stranger, seemed to be the subject of a printed flyer broadcast by the American Stamp Dealers Association to its members, advertising its theft and the offer by defendant to pay a generous reward for its return. Upon comparing his purchases with the detailed description of the stolen collection set out in the flyer, plaintiff was convinced that the albums of stamps in his possession were indeed the stolen property of the defendant. Then and there as the possessor of property which he knew to be stolen, he was in peril of the Florida penal statute making it a felony to secrete, withhold or appropriate personal property of $100 or more in value, so as to deprive the true owner of its possession, use or benefit. (Florida Stat. Ann., §§ 811.021 and 811.16.)
Plaintiff’s phone calls to the F. B. I. and defendant, disclosing his recent acquisition of the stolen property, and his subsequent delivery of the stolen stamp collection to the F. B. I. whence they were returned to defendant, amount to nothing more or less than the doing of that which plaintiff was legally bound to do, and so could not serve as free, voluntary acts sufficient to constitute consideration for defendant’s offer to pay a reward for the return of the stolen property. (Chester v. State, 176 So. 2d 104 [Dist. Ct. of Appeal, Fla., 1965]; Steiner Egg Noodle Co. v. City of New York, 63 Misc 2d 163, affd. 34 A D 2d 892.) Moreover, plaintiff having no knowledge of-the offer of reward at the time he acquired possession of the property, could not have been relying on that offer at the time he laid out his money to the thief, as falsely alleged in paragraph 12 of his complaint.
Thus, on familiar principles of law, governing unilateral contracts, which apply in actions to recover on offers of reward, since the actor-offeree must have knowledge of the offer in tendering performance of the act called for by the offer of the promisor, and since the act performed must be the free, voluntary act of the actor-offeree and not an act enforced by performance of a legal duty, before a contract results, the plaintiff’s attempt to claim the reward here must fail. (Chester v. State, supra; Sumerel v. Pinder, 83 So. 2d 692 [Sup. Ct. Fla., 1955]; Broadnax v. Ledbetter, 100 Tex. 375; Howland v. Lounds, 51 *625 N. Y. 604; Rubenstein v. Frost, 116 N. Y. S. 681 [App. Term, 1909]; Shelden v. George, 132 App. Div. 470 [1st Dept.]; Rheinhauer v. De Krieges, 188 Misc. 747; 1 Williston, Contracts [3d ed.], § 33B; 1 Corbin, Contracts, § 59.)
Even if we were to leave aside the principles of strict contract law which control here, and explore the possible application of equitable principles, we find that as between the truly innocent victim of the forcible, surreptitious larceny, and the bargain-hunting buyer of the stolen goods whose cunning carelessness in making minimal inquiries to check title and identity is as much the cause of his victimization as the palpable deceit of the thief, it cannot be said that on restoration of the stolen goods, the money paid by the would-be buyer to the thief, unjustly enriched the true owner. Nor can it be said that it offends against equity and good conscience to require the thief’s vendee to disgorge the goods unrightfully acquired, without shadow of title, and restore them to the true owner. The disgorging vendee of the stolen property seems to have a good cause of action in fraud and deceit for damages covering all his losses, against the convicted, imprisoned thief. It is sound law and equity to let him pursue that nonassignable remedy rather than the unearned reward he learned of only when his choice, if it can be called such, was between becoming a criminal receiver of stolen goods, or taking the loss of a bad bargain.
The neighboring stamp dealer the plaintiff consulted to check the magnitude of his seeming bargain, is the one who might have had a good claim to the reward, of which he had gained foreknowledge, had he notified the defendant, or the F. B. I., and taken the trouble to lead them to the stolen stamp collection in the hands of the plaintiff. Instead, true friend that he was, he chose to alert the plaintiff to the hot goods he had on his hands so that plaintiff without delay, could sound the alarm and save himself the danger, trouble and embarrassment of being caught with the goods and having to make post factum explanations and efforts to exculpate himself from complicity as the criminal receiver of stolen goods.
The majority seem to premise their departure from the longstanding precedents on the declaration that “ sound social principles dictate that innocent purchasers be encouraged to return stolen property when they learn of the theft.” That is the whole point and purpose of the penal statutes which make it a crime to withhold goods (particularly for a dealer in such goods) known to be stolen or to belong to another. (See *626 Florida Stat. Ann., §§ 811.021 and 811.16 and N. Y. Penal Law, §§ 165.50, 165.55.) The most salutary and effective way to supply such encouragement is by the sanction of conviction and imprisonment for failure to promptly disgorge.
Of course plaintiff can, seriously, be termed an innocent buyer only in the sense that he was not confronted with direct evidence that the stamp collection in the hands of the stranger had been stolen. He asked for no warranties, assurances, or representations. He asked no questions. He made no effort to approximate value or to slow down the stranger’s haste to sell so he could consult the handy catalogue, or his expert neighbor and friend, for value. He was not interested in value. His collector’s eye alone must have told him he was buying something patently worth far more than he was offering. His ordinary business sense and dealer’s prudence having warned him he was buying a pig in a poke, he scaled his offer to allow for hidden defects. And he got just what he bargained for. Only the scarcely hidden, latent defect of a thief’s title (which is no title at all) came to light too quickly and too completely to afford him any benefit from his bargain, even to so small an extent as recouping the outlay of $1,175 with which he had gambled. If the dictates of sound social principles are to be consulted as a ratio decidendi, it seems crystal clear that both innocent purchasers and sharp, shrewd sophisticates (particularly dealers) must be discouraged from promoting, whether unwittingly or no, all shades and grades of larceny, by building a bigger and readier market for stolen goods, in taking chances on strangers and gambling on suspicious titles. This is best accomplished by reiterating the long-established principles of law which make it perfectly plain that if calculated unwariness in not knowing customers, leads to a bad bargain with a thief, then when discovery becomes imminent and the goods get too hot to hold, looming gambling losses cannot be covered by blowing a late whistle and collecting a reward.
Neither on principles of law, equity, nor social science can the plaintiff be deemed to have made out a cause of action. The judgment in favor of plaintiff should be reversed and judgment given for the defendant dismissing the complaint.
Gold and Markowitz, JJ., concur Per Curiam in opinion; Quinn, J. P., dissents in memorandum.
Judgment affirmed, etc.