# UNITED STATES *v.* CONNOR.

## APPEAL FROM THE COURT OF CLAIMS.

No. 113. Argued January 9, 1891. — Decided January 19, 1891.

Any right which an informer might have had to a share in a fine, penalty, or forfeiture under the provisions of the act of July 13, 1866, 14 Stat. 145, was taken away by the act of June 6, 1872, 17 Stat. 256, c. 315, § 9, unless the amount of the fine, penalty or forfeiture was fixed and settled by judgment or compromise, and by payment, before the passage of the latter act.

Without resting this case on the point, the court is of opinion that the claimant's claim was presented to the Secretary of the Treasury, and was finally passed upon and adjudicated by him twelve years before the commencement of this action, and that consequently it is barred by the statute of limitations. Rev. Stat. § 1069.

THIS case being reached in its order on the docket on the 17th of December, 1890, argument was begun. The court, however, ordered the case to be passed, to be heard before a full bench. On the 9th of January, 1891, it was again called, and was argued. The case, as stated by the court, was as follows:

In December, 1871, the appellee gave the first information,

to the proper officers of the United States, of a violation of the internal revenue laws by one William Stout. Proceedings were thereupon instituted by the government for collection of the penalty therefor. At the time this information was given, section 179 of the act of June 30, 1864, as amended by the act of July 13, 1866, (14 Stat. 145, c. 184,) was in force. This, after casting upon the collectors the duty of instituting prosecutions for all fines, penalties and forfeitures due the government, under the revenue acts, contained these provisions as to informers: "And where not otherwise provided for, such share as the Secretary of the Treasury shall, by general regulations, provide, not exceeding one moiety nor more than five thousand dollars in any one case, shall be to the use of the person, to be ascertained by the court which shall have imposed or decreed any such fine, penalty or forfeiture, who shall first inform of the cause, matter or thing whereby such fine, penalty or forfeiture shall have been incurred; and when any sum is paid without suit, or before judgment, in lieu of fine, *penlly* [penalty] or forfeiture, and a share of the same is claimed by any person as informer, the Secretary of the Treasury, under general regulations to be by him prescribed, shall determine whether any claimant is entitled to such share as above limited, and to whom the same shall be paid, and shall make payment accordingly. It is hereby declared to be the true intent and meaning of the present and all previous provisions of internal revenue acts granting shares to informers, that no right accrues to or is vested in any informer in any case until the fine, penalty or forfeiture in such case is fixed by judgment or compromise, and the amount or proceeds shall have been paid, when the informer shall become entitled to his legal share of the sum adjudged or agreed upon and received: *Provided*, That nothing herein contained shall be construed to limit or affect the power of remitting the whole or any portion of a fine, penalty or forfeiture conferred on the Secretary of the Treasury by existing laws."

In 1872 the statute was changed by section 39 of the act of June 6 of that year, (17 Stat. 256, c. 315,) which reads: "That so much of section one hundred and seventy-nine of the act of

July thirteenth, eighteen hundred and sixty-six, as provides for moieties to informers be, and the same is hereby, repealed; and the commissioner of internal revenue, with the approval of the Secretary of the Treasury, is hereby authorized to pay such sums, not exceeding in the aggregate the amount appropriated therefor, as may, in his judgment, be deemed necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law; and for this purpose there is hereby appropriated one hundred thousand dollars, or so much thereof as may be necessary, out of any money in the treasury not otherwise appropriated." By section 46 of the same act (p. 258) it was provided as follows: "That all acts and parts of acts inconsistent with the provisions of this act are hereby repealed: *Provided*, That all the provisions of said act shall be in force for levying and collecting all taxes properly assessed, or liable to be assessed, or accruing under the provisions of former acts, the right to which has *has* already accrued, or which may hereafter accrue, under said acts, and for maintaining, continuing and enforcing liens, fines, penalties and forfeitures incurred under and by virtue thereof. And this act shall not be construed to affect any act done, right accrued or penalty incurred under former acts, but every such right is hereby saved; and all suits and prosecutions for acts already done in violation of any former act or acts of Congress relating to the subjects embraced in this act may be commenced or proceeded with in like manner as if this act had not been passed."

The suit against Stout was not tried. On May 13, 1873, a settlement was made with him; and he paid the United States, in lieu of and as a penalty, the sum of eight hundred dollars. On March 22, 1875, the appellee presented an application to the Treasury Department for his informer's share, which was endorsed "too late," and nothing was done thereunder. Twelve years thereafter, and on February 24, 1887, by his attorney, he made a second application. To such application the following answer was returned:

"TREASURY DEPARTMENT, OFFICE OF THE SECRETARY,

"WASHINGTON, D.C., Fei uary 24, 1887.

"GEORGE A. KING, Esq.,

"*Attorney-at-Law, Washington, D.C.*

"SIR: In your letter to the Secretary, dated the 20th of January, 1887, you request that your client, Mr. Frederick D. Connor, of New Albany, Indiana, be declared to have been the first informer in a case in which he claimed that a penalty of $800 has been recovered by reason of information which had been given by him, and you make this request so that in case the Secretary should decline to order payment of the proper share of said penalty to the informer, he may then be in a position to apply to the Court of Claims for relief.

"In reply, I have to say that the case is not one in which payment of the informer's share can be properly made at the present time, because the penalty was fixed by compromise, and the amount paid after August 1, 1872, when the act of June 6, 1872, (17 Stat. 256,) took effect, repealing section 179 of the act of June 30, 1864, as amended by the act of July 13, 1866, (14 Stat. 145,) under which the share of the informer is claimed in this case, and because the question as to the effect of such repeal was involved in the Ramsay case, in which the judgment of the Court of Claims, on being appealed to the Supreme Court of the United States, was recently affirmed by a divided court, thus rendering the decision of no effect as a precedent.

"I see no objection, however, to stating that the proof filed in the office of the Secretary of the Treasury shows that said Frederick D. Connor gave the first information upon which a penalty of $800 was recovered by compromise from William Stout, a distiller of fruit; the compromise having been approved by the Secretary of the Treasury on the 13th day of May, 1873, and the penalty having been paid on the 29th of April, 1874.

"I add that under the schedule of shares prescribed by the Secretary of the Treasury, August 14, 1866, pursuant to the authority conferred by said section 179, the share of the penalty that would be payable to an informer in this case would be three hundred and seventy dollars ($370.00).

"It is presumed that on this declaration you can take the case to the Court of Claims and obtain an adjudication.

"C. S. FAIRCHILD, *Acting Secretary.*"

Thereafter this suit was brought, claiming under the act of 1866, and the alleged decision by the Secretary of the Treasury as evidenced by the letter quoted. The judgment of the Court of Claims was in favor of the claimant, and the government has brought this appeal.

*Mr. Assistant Attorney General Cotton* for appellants.

*Mr. George A. King* for appellee.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The right of claimant, as informer, depends on the act of 1866. Before final adjustment of the claim made against Stout, the act of 1866 was repealed. Unless, therefore, prior to this repeal some right was vested, the claimant has no standing in court. But the act of 1866 explicitly declared, that no right accrued to an informer until the fine, penalty or forfeiture became fixed by judgment or compromise, and the amount thereof was paid. While there is in the repealing act a reservation, it is only of rights which have accrued. As under the act of 1866, no right accrued until judgment or compromise, the repeal by the act of 1872 left nothing to the claimant. It is familiar law, that an offer of reward conveys no right beyond the specific terms of the offer; that it may be withdrawn at any time; and that unless prior to the withdrawal something has been done to complete a contract or settle and establish a right under the offer, a claimant takes nothing by reason thereof. It is urged that the claimant had done all that he was called upon to do under the act of 1866; that the government had the full benefit of his information; and that it would be unseemly for it to appropriate such benefit and repudiate any liability therefor. It is claimed that a reasonable construction of the act of 1866 is, that the lia-

bility to the informer arose the moment the information was given, while the amount to be paid was not settled until judgment or compromise and payment; and the opinion of the Court of Claims, in the case of *Ramsay* v. *United States*, 21 C. Cl. 443, is cited in support of this view.

But the language of the act of 1866 is clear. It is emphatic that no 'right accrues. No clearer language could be used; and we may not, under the pretence of an equity, enlarge the scope of an offer beyond its express words. Is the claim so meritorious as to justify a strained construction of the language of the statute? What did the claimant do? So far as it appears, he simply informed the officers of the government of a violation of one of the laws of his country. Is there no obligation resting upon a citizen to disclose such a fact? Does such an act of disclosure make him a special object of public gratitude; or has he simply discharged a duty, resting in common upon all citizens? Is it not clear that an offer of reward therefor is not the recognition of an equitable duty of the government to the informer, but a mere act of public policy, the giving or withholding of which, and whose terms, are wholly within the discretion of the government. Whoever claims under such an offer must bring himself within its terms. Failing to do that, his compensation is the consolation which comes to every citizen from the discharge of a public duty, which is the common obligation of all. We conclude, therefore, that the claimant acquired no right before the repeal of the act of 1866, and, therefore, has no claim against the government for compensation for the information he gave.

If the facts were otherwise, and a stronger claim for compensation was made out, can the letter of the Secretary of the Treasury be considered as an adjudication of the claim? It is conceded that such an adjudication is prerequisite to this action. The tenor of the Secretary's letter is not to the effect that he is adjudicating upon the claim. On the contrary, the findings show that twelve years before, the claim had been presented and practically determined against the claimant. The statute of limitation would bar a suit commenced as this was, twelve years after such adjudication. Rev. Stat. § 1069: *Finn* v.

*United States*, 123 U. S. 227. Obviously, from the language of the letter, the Secretary did not intend a reopening of the case and a new adjudication, but simply to furnish to the claimant such information as the records of his department disclosed.

Without resting the case, however, on this last point we hold, for the reasons first stated, that the judgment of the Court of Claims was erroneous; and it must be

> *Reversed, and the case remanded with instructions for further proceedings in accordance with the views herein expressed.*