83 So.2d 692 (1955)
Danny SUMEREL, Appellant,
v.
Howard G. PINDER, Appellee.
Supreme Court of Florida. Special Division B.
December 2, 1955.
Fitzgerald & Wallace, Miami, for appellant.
Roy Lee Jones, Miami, for appellee.
THOMAS, Justice.
This appeal was taken from a final decree denying the appellant any part of a fund offered as a reward by the appellee.
The litigation began with the filing by the appellee of a bill of interpleader from which it appears that his wife met a violent death at the hands of a person unknown. In an attempt to bring the prepetrator of the crime to justice, the appellee offered to pay $5,000 for information leading to the arrest and conviction of the one who committed the crime. One James N. Lewis was later "convicted of the crime of murder in the first degree of plaintiff's [appellee's] wife." Soon afterwards fourteen persons, including appellant, claimed the reward, and one of them instituted a suit against appellee in the Civil Court of Record of Dade County to recover the fund. The appellee stated his readiness to deposit the sum in court and asked that the suit against him be enjoined; that all parties asserting claims against him be required to prosecute their actions in the interpleader suit; and that upon depositing the money in court, the appellee be dismissed.
*693 The money was deposited; the injunction was issued; the claims of all defendants were dismissed. It was the chancellor's view that all information furnished by appellant had been given to a representative of the Federal Bureau of Investigation and that it was he who had relayed it directly or indirectly to the other claimants  all members of the Miami Police Department or the sheriff's staff. The chancellor decided that there was no responsibility, on the part of the appellee, to appellant or anyone else who appeared in the suit, except the agent of the Federal Bureau of Investigation who was precluded from accepting the money by a rule of the bureau, and who withdrew his claim on that account.
Since there is a lone appellant here, we will confine our observations to his activities with reference to the detection of the criminal, James N. Lewis. Appellant was an informer in the service of the Federal Bureau of Investigation and in that capacity had gained the confidence of a gang headed by Lewis. Intelligence he gained was reported to the bureau representative, Edward L. DuBois, Jr., while in February of 1952 the bureau was investigating Lewis and other persons suspected of complicity in the theft of motorcars. Parenthetically, it should be said that appellant was not engaged by the Federal Bureau of Investigation because of any criminal tendency on his part or because of any prior connection with a criminal element, but because of his experience as a dealer in second-hand cars. During appellant's service he was entrusted by Lewis with a .32 Beretta Italian pistol which he showed to the agent of the bureau and the agent recorded the serial number of the weapon. The auto-theft matter was closed in February or March 1952.
Appellee's wife was murdered 7 August 1952. Sometime after the murder there appeared in the Miami Herald a picture of a .32 Italian Beretta pistol and a request that anyone having knowledge of a person possessing such a weapon report the matter to a certain lieutenant of the Miami Police Department because that was the type of firearm used to kill appellee's wife. The agent of the bureau then informed the chief of police and the police lieutenant that such a gun was possessed by Lewis.
The appellant insisted that the day following the publication of the picture he happened to meet the agent in Burdine's store and asked the agent why the knowledge of Lewis' Beretta pistol had not been sent to the police, reminding the agent of the record in the bureau's files. The agent was firm in his statement that information about the gun had been received from appellant the preceding February or March and that he had advised the police of Lewis' ownership of such a pistol before the casual meeting with the appellant in the store. There is some dispute, too, about the voluntariness of appellant's eventual cooperation with the police in their effort to solve the murder.
We think, however, that the difference between the appellant's and the agent's versions does not amount to a distinction. Rewards are contractual. When appellee notified the public that he would pay for information leading to the conviction of the murderer of his wife, he made an offer. To form a contract binding the offerer, it was necessary that there be a meeting of the minds by an acceptance and performance within the terms of the offer, Broadnax v. Ledbetter, 100 Tex. 375, 99 S.W. 1111, 9 L.R.A.,N.S., 1057.
We are unable to see how the appellee's offer could have ripened into a contract by the action of the appellant, whether his story or the story of the agent be accepted. Clearly all the information appellant gathered was, under any construction of the testimony, delivered by the appellant to the bureau long before the offer was ever made. The appellant did not act in response to the offer, except to remind the agent that information tending to solve the murder was already in the files of the bureau, and had been put there at the time appellant was in the bureau's service.
We think the chancellor was correct when he ruled, in effect, that appellant's participation was not an acceptance of the *694 offer of a reward, but that in a chance meeting with the agent he simply drew the agent's attention to information he had furnished long before when he was in the service of the organization to which he reported it.
We conclude that the decree should be 
Affirmed.
DREW, C.J., and ROBERTS and THORNAL, JJ., concur.