Clarence OTWORTH, Plaintiff,

v.

THE FLORIDA BAR,
et al, Defendants.

No. 99–908–CIVT–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 29, 1999.

---

6.  November 11, 1999, is a federal holiday.

Clarence Otworth, Clearwater, FL, plaintiff pro se.

Barry Scott Richard, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, FL, for Florida Bar, defendant.

Frank R. Jakes, James W. Humann, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Frank Robert Jakes and James Willaim Humann, defendants.

## ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on:

(1) Defendant, Larry Claxton Flynt's (hereinafter "Flynt"), Motion to Dismiss, (Dkt.8), filed on June 4, 1999.

(2) Defendants, the Honorable Crockett Farnell, the Honorable Catherine Harlan, the Honorable Charles Weaver Cope, VI, and Assistant Attorney General Alison Becker's, Motion for Summary Judgment and Motion to Dismiss, (Dkt.9), filed on June 8, 1999.

(3) Defendant, the Florida Bar's, Motion to Dismiss, (Dkt.21), filed on June 16, 1999.

(4) Defendants, Frank R. Jakes and James W. Humann's, Motion to Dismiss, (Dkt.22), filed on June 17, 1999.

(5) Plaintiff, Clarence Otworth's, responses thereto. (Dkts. 18, 19, 28, and 29).

## BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, (Dkt.1), filed on April 16, 1999. On September 2, 1999, Plaintiff filed a suit against Defendant Flynt in the Sixth Judicial Circuit, in and for Pinellas County, Florida, alleging breach of contract. At some point after the original Sixth Circuit cause of action was filed, Plaintiff added Defendants Farnell and Harlan to the action. On March 16, 1999, Plaintiff voluntarily dismissed the Sixth Circuit cause of action.

On April 16, 1999, Plaintiff filed a Complaint against the Florida Bar, the Honorable Crockett Farnell, the Honorable Catherine Moore Harlan, the Honorable Charles Weaver Cope, VI, Frank Robert Jakes, James William Humann, Alison L. Becker, and Larry Claxton Flynt in the United States District Court for the Middle District of Florida. Defendants Farnell, Harlan, and Cope are judges in the Sixth Judicial Circuit of Florida who heard some portion of Plaintiff's Sixth Circuit case. Defendant Becker is an Assistant Attorney General who appeared as counsel

for Defendants Farnell and Harlan in the Sixth Circuit case. Defendants Jakes and Humann are private attorneys who were retained by Defendant Flynt in the original Sixth Circuit case. Defendant Flynt is the publisher and principal agent of LFP, Inc., a large publishing, media, and entertainment corporation. The Florida Bar Association is a self-governing organization of Florida lawyers.

Count I of Plaintiff's fifty (50) page Complaint alleges that the Florida Bar unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed to deprive Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States. In connection with the alleged conspiracy, Plaintiff alleges that the Florida Bar has violated 15 U.S.C. §§ 1 and 2 (hereinafter "the Sherman Act") by: engaging in a "group boycott" of non-lawyer *pro se* Plaintiff and others; monopolizing the jury trial market; suppressing and eliminating competition in the form of non-lawyer *pro se* plaintiffs; overcharging captive rate-paying non-lawyer customers; creating an unlawful monopoly over justice; depriving Plaintiff of his right to sue and enforce a contract in the Circuit Court; and requiring Plaintiff to have his pleadings signed by a member of the Florida Bar.

Count I of Plaintiff's Complaint also makes allegations concerning Defendants Farnell, Harlan, and Cope. Plaintiff alleges that Defendants Farnell, Harlan, and Cope acted in excess of their jurisdiction by: disregarding the rotation for assigning cases; appointing themselves to the previously dismissed state case; engaging in a conspiracy to deprive Plaintiff of his right to sue and to enforce a contract; knowingly and willfully making and causing to be made false, fictitious, and fraudulent statements and representations; never allowing a *pro se* non-lawyer plaintiff to have a jury trial in their respective courtrooms; engaging in a "group boycott" of Plaintiff's jury trial; assisting lawyers in their monopolization of the jury trial market; agreeing with the Florida Bar to suppress and eliminate non-lawyer *pro se* plaintiff competition; agreeing with the Florida Bar to overcharge its captive rate-paying non-lawyer customers; being unfair and partial due to their mandatory membership in the Florida Bar; agreeing with the Florida Bar members to deprive Plaintiff of his right to sue and to enforce a contract; agreeing with the Florida Bar to deprive Plaintiff of equal justice; and by requiring Plaintiff to have all of his pleadings signed by a member of the Florida Bar.

In addition, Plaintiff alleges that Defendant Harlan: allowed Defendant Jakes to schedule a hearing without clearing the time with Plaintiff first; held a hearing on Defendant Jakes' motion while Plaintiff was not present; and "impersonated a Circuit Judge" by granting Defendant Jakes' motion for a protective order forty-eight (48) hours after Defendant Harlan was added as a defendant in the case.

As to Defendant Cope, Plaintiff alleges that relief is permitted because Defendant Cope failed to admonish Defendant Becker when Defendant Becker "brazenly filed frivolous motion[s]" for a temporary injunction and protective order and asked Defendant Cope to discriminate against Plaintiff and require Plaintiff to have his pleadings signed by a member of the Florida Bar. Plaintiff also alleges that Defendant Cope "re-instituted the Star Chamber and granted [D]efendants' a temporary injunction without notice and enjoined [Plaintiff] from filing any pleadings not signed by a member of [the Florida Bar]."

Count I of Plaintiff's Complaint also contains allegations, similar to those previously mentioned, against Defendants Jakes, Humann, and Becker. In addition to those previously discussed Plaintiff alleges that relief is proper because Defendants Jakes, Humann, and Becker failed to report the alleged misconduct of each other, as well as the alleged misconduct of the previously mentioned Defendants.

Count II of Plaintiff's Complaint contains allegations nearly identical to those contained within Count I. However, Plain-

tiff asserts that relief is warranted under 42 U.S.C. § 1983 (hereinafter "the Civil Rights Act"). Count II asserts allegations against Defendants, the Florida Bar, Farnell, Harlan, Cope, Jakes, Humann, and Becker.

Count III of Plaintiff's Complaint states that Defendants, the Florida Bar, Farnell, Harlan, Cope, Jakes, Humann, and Becker, have violated the Fifth Amendment by treating Plaintiff more harshly than those individuals who seek access to the court while being represented by an attorney. Plaintiff further states that the Supreme Court of Florida's involvement with the Florida Bar makes this a constitutional issue.

Count IV of Plaintiff's Complaint alleges breach of a unilateral contract. Count IV is the only count that contains an allegation against Defendant Flynt. Count IV alleges that: (1) in or about February 1978, Defendant Flynt offered a one million dollar reward for "information leading to the arrest and conviction of anyone involved in the planning or execution of President Kennedy's murder, or for information which makes it possible for the truth to come out"; (2) on or about December 25, 1996, Columbia pictures released a motion picture about the life of Larry Flynt titled *The People v. Larry Flynt*, in which Defendant Flynt was portrayed by actor Woody Harrelson; (3) while acting in the motion picture, Woody Harrelson, stated "Why not, it would be worth a million dollars to know who killed Kennedy"; (4) the motion picture *The People v. Larry Flynt* reenacted Defendant Flynt's decision to publish the reward and a copy of the reward was publicized; (5) Plaintiff learned of the reward in February 1998, when a cable television network broadcast the motion picture; (6) Plaintiff acted in response to the offer contained within the motion picture and performed the services that Defendant Flynt allegedly requested; (7) on March 13, 1998, Plaintiff wrote to Defendant Flynt's attorney and claimed the reward; (8) Plaintiff traded his thirty-five (35) years of assassination research for Defendant Flynt's re-

ward; (9) Defendant Flynt was notified of Plaintiff's intent to sue if the reward was not paid; (10) and on April 27, 1998, Plaintiff received a letter from Defendant Flynt's attorney that stated, "Mr. Flynt is not interested in pursuing the matter about which you wrote. Accordingly, I am returning your materials to you."

Count V of Plaintiff's Complaint alleges that the Florida Bar has an unlawful monopoly power over justice. Plaintiff further alleges that the Supreme Court of Florida has acted outside of its jurisdiction by informing state bar officials that they could form a unified bar association. Plaintiff alleges that the Florida Bar has not allowed a non-lawyer *pro se* plaintiff to have a jury trial in the forty-nine (49) years the Florida Bar has been in existence. Plaintiff states that the Florida Bar has no purpose except to "suppress and eliminate non-lawyer *pro se* plaintiff competition and overcharge its captive rate-paying non-lawyer customers."

In connection with Counts I, II, and III, Plaintiff requests three million five-hundred thousand dollars ($3,500,000.00). Plaintiff requests one million dollars ($1,000,000.00) in connection with the allegations contained within Count IV. In addition to the monetary requests, Plaintiff also requests that this Court: (1) declare that the Supreme Court of Florida acted in excess of its jurisdiction when it informed bar officials that they could make a unified bar association; (2) declare that mandatory membership in the Florida Bar creates an unlawful monopoly and is unconstitutional; (3) declare that American citizens should not be deprived of a jury trial because they choose to represent themselves; (4) declare that Defendants violated the Sherman Act, the Civil Rights Act, and the Fifth Amendment; (5) declare that Defendants Farnell, Harlan, and Cope acted in excess of their jurisdiction and are not entitled to absolute immunity; and (6) award Plaintiff costs and attorney's fees.

## Standard of Review

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley*, 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court may only examine the four corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232, 233 (M.D.Fla.1995). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). When a plaintiff proceeds *pro se*, his or her allegations must be read liberally and the court must hold the complaint to a less stringent standard than it holds those drafted by attorneys. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In addition, a court must accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when, on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991).

## Defendant Flynt's Motion to Dismiss

Defendant Flynt requests dismissal of Plaintiff's breach of contract claim as contained within Count IV of Plaintiff's Complaint. The contract to which Plaintiff refers in Count IV was allegedly published in February 1978 by Defendant Flynt. Defendant Flynt alleges, in support of dismissal, that Plaintiff has admitted in the Complaint to being unaware of the February 1978 reward offer and that Plaintiff gained his knowledge of the alleged reward offer by watching a motion picture in February 1998. Defendant Flynt states that the alleged reward offer was illegible during the one (1) to two (2) seconds it was displayed in the motion picture *The People v. Larry Flynt*. Defendant states that Plaintiff has failed to allege that Defendant Flynt ever read, skimmed, or reviewed any of the materials submitted by Plaintiff in his March 13, 1998, letter and failed to allege that Defendant ever used or exploited any of the materials forwarded by Plaintiff to Defendant Flynt's counsel on March 13, 1998. Plaintiff also, according to Defendant Flynt, has failed to assert that any of the materials submitted to Defendant Flynt were created or prepared by Plaintiff after Plaintiff watched *The People v. Larry Flynt*. In support of this, Defendant Flynt cites to Plaintiff's Complaint, which states that Plaintiff has compiled the research materials submitted to Defendant Flynt over a thirty-five (35) year period. Defendant Flynt asserts that Plaintiff never read the alleged reward offer prior to Plaintiff's initiation of the state court suit.

After due consideration of Plaintiff's Complaint the Court finds that dismissal of Plaintiff's Complaint, as it relates to Defendant Flynt, is appropriate. Plaintiff's Complaint refers to two (2) separate instances in which a reward offer was allegedly published by Defendant Flynt. Plaintiff's Complaint refers to the alleged original reward offer made by Defendant Flynt in February 1978 and to a "reenacted" reward offer made through the mo-

tion picture *The People v. Larry Flynt* in December 1996. Plaintiff admits to learning of the reward in February 1998, when "Time Warner showed the movie [*The People v. Larry Flynt*] on cable television in Clearwater, Florida." Plaintiff further admits to acting in response to Defendant Flynt's offer of reward, as contained in the motion picture *The People v. Larry Flynt*. Plaintiff completely fails to allege the date upon which he learned of Defendant Flynt's original reward offer, as published in February 1978.

After viewing Plaintiff's allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim for breach of contract. An offer of reward is contractual. *See Sumerel v. Pinder,* 83 So.2d 692, 693 (Fla.1955). In order to form a binding contract, there must be a meeting of the minds "by an acceptance and performance within the terms of the offer." *Id.* "[A]n offer of reward conveys no right beyond the specific terms of the offer" and may be withdrawn at any time. *United States v. Connor,* 138 U.S. 61, 65, 11 S.Ct. 229, 34 L.Ed. 860 (1891). "Unless prior to the withdrawal [of the offer of reward] something has been done to complete a contract, or settle and establish a right under the offer, a claimant takes nothing. . . ." *Id.* An individual making a claim of reward "must bring himself within [the] terms [of the reward]" and must show that he acted in response to the offer of reward. *Id.* at 66, 11 S.Ct. 229. *See also Sumerel,* 83 So.2d at 693. A claimant must allege "knowledge of existence of the offer of reward" to be entitled to the benefits of such reward. *Slattery v. Wells Fargo Armored Service Corp.,* 366 So.2d 157, 159 (1979).

As Plaintiff has admitted within his Complaint to acting in response to the alleged "reenacted" reward offer and not the original offer published in February 1978, the Court will address the alleged "reenacted" reward offer. Plaintiff's Complaint alleges that Defendant Flynt decided to publish and "reenact" the original

February 1978 reward offer in the motion picture *The People v. Larry Flynt* and that due to this decision Defendant Flynt invited acceptance of the reward offer contained therein. Plaintiff acknowledges that Defendant Flynt was portrayed throughout the motion picture *The People v. Larry Flynt* by actor Woody Harrelson and further acknowledges that the motion picture was directed by an individual named Milos Forman.

Before examining the alleged "reenacted" reward offer made through the motion picture *The People v. Larry Flynt,* the Court notes that Plaintiff in his Complaint has repeatedly relied on the terms of Defendant Flynt's original 1978 reward offer, even though Plaintiff admittedly only had knowledge of the "reenacted" reward offer contained within the motion picture *The People v. Larry Flynt.* Plaintiff does not state within the Complaint what the alleged terms of the "reenacted" reward offer are, but instead seems to allege reliance on the terms of Defendant Flynt's original 1978 reward offer. While the Court notes this discrepancy, the Court finds that whether Plaintiff relied on the terms of Defendant Flynt's original 1978 reward offer or those contained within the "reenacted" reward offer is of no significance to the outcome of the various motions to dismiss presently at issue. Whether the terms of the alleged "reenacted" reward offer are identical to those contained within the original 1978 reward offer or differ greatly therefrom, the Court finds that dismissal is warranted.

In support of Plaintiff's claim against Defendant Flynt, Plaintiff appears to assert that Defendant Flynt was involved in the making of the motion picture *The People v. Larry Flynt.* Plaintiff states that Defendant Flynt invested several million dollars in the motion picture to promote himself and to make a profit and that the motion picture's director, Milos Forman, used Defendant Flynt as a consultant and an actor. Defendant Flynt acknowledged the truth of the reward offer contained

within the motion picture *The People v. Larry Flynt*, according to Plaintiff, when Defendant Flynt allegedly said, "The best thing about this movie is that it's all true."

In response to the alleged "reenactment" of the reward offer, according to Plaintiff, Plaintiff performed the service allegedly requested by Defendant Flynt. Plaintiff responded to the "reenactment" of Defendant Flynt's 1973 reward offer by submitting thirty-five (35) years of assassination research. Plaintiff's submission to Defendant Flynt's attorney asserted that the Secret Service had in fact murdered JFK and that the FBI had framed Lee Harvey Oswald. Plaintiff further alleged that Lyndon Johnson, J. Edgar Hoover, and John Bowden Connally orchestrated the murder of JFK. In connection with the allegations submitted by Plaintiff to Defendant Flynt's attorney, Plaintiff provided the names of, according to Plaintiff, most of the accomplices, conspirators, and financiers behind the assassination of JFK.

The alleged "reenactment" of Defendant Flynt's reward offer occurred, according to Plaintiff, when actor Woody Harrelson stated, "Why not, it would be worth a million dollars to know who killed Kennedy." In connection with Woody Harrelson's statement, Plaintiff alleges that Defendant Flynt's decision to publish the Kennedy reward offer was reenacted and a copy of the Kennedy reward offer was subsequently publicized.

■ As the viewer of a motion picture that appeared on cable television, Plaintiff cannot allege that a sufficient meeting of the minds occurred between himself and Defendant Flynt. Plaintiff admits that Defendant Flynt was not portraying himself in the motion picture *The People v. Larry Flynt* and admits that the reward offer was "reenacted." As such, Plaintiff is unable to show a meeting of the minds of such a character as to avoid dismissal. The factual allegation that Defendant Flynt was portrayed in a motion picture by an actor who made statements within the motion picture concerning an alleged reward offer does not establish the making

of an offer or the formation of a contract. Plaintiff has not alleged that actor Woody Harrelson or any other individual involved in portraying the alleged "reenacted" reward offer were agents of Defendant Flynt. Merely because Plaintiff alleges that Defendant Flynt made a statement that the information contained within the motion picture *The People v. Larry Flynt* was true, and allegedly submitted information or financial backing for the motion picture, does not mean that Defendant Flynt intended to make an offer to the many potential viewers of the motion picture.

Plaintiff has failed to present any evidence or factual allegations to even suggest that a meeting of the minds occurred between himself and Defendant Flynt. The Court reminds Plaintiff that in order to form a binding contract, there must be a meeting of the minds "by an acceptance and performance within the terms of the offer." *Sumerel,* 83 So.2d at 693. Plaintiff has not sufficiently alleged that an offer was made, much less that a meeting of the minds occurred between himself and Defendant Flynt. Therefore, the Court finds that Plaintiff has completely failed to present sufficient allegations to withstand the exceedingly low threshold for surviving a motion to dismiss.

Although Plaintiff has not presented sufficient factual allegations concerning the "reenacted" reward offer made in the motion picture *The People v. Larry Flynt,* the result would be the same if the Court assumed that the entire original reward offer was republished within the motion picture. Defendant Flynt's original reward offer contains specific requirements which must be met before the individual claiming the reward will be granted the relief requested. Plaintiff has completely failed to allege satisfaction of the requirements contained within Defendant Flynt's original reward offer. Defendant Flynt's original reward offer states, in pertinent part, that:

I am personally guaranteeing a $1,000,000 reward for information leading to the arrest and conviction of anyone involved in the planning or execution of President Kennedy's murder, or for information which makes it possible for the truth to come out. . . .

To aid in this public campaign to solve JFK's murder, call or write to Americans for a Free Press, 40 W. Gay St., Columbus, Ohio 43215, telephone (614) 228-0877.

An independent panel of experts and judges, including Ralph David Abernathy (SCLC), Mark Lane, Dick Gregory, Lillian Smith, and Robert Groden, will determine the appropriate recipient or recipients of the reward. . . .

Time is crucial. We must act now.

(Dkt. 1, Exhibit A2).

■■■ In connection with this alleged offer, Plaintiff has merely stated that he submitted information to Defendant Flynt's attorney, Alan L. Isaacman. Plaintiff states that in response to receiving Plaintiff's claim of the million dollar reward, Mr. Isaacman returned Plaintiff's letter and wrote, "Mr. Flynt is not interested in pursuing the matter about which you wrote. Accordingly, I am returning your materials to you." Plaintiff claims entitlement to the million dollar reward because Plaintiff, in his own mind, has submitted evidence which "ma[de] it possible for the truth to come out." However, Plaintiff overlooks the fact that the original reward offer contains further requirements than just making the truth, according to Plaintiff, come out. Defendant Flynt's original reward offer, published in February 1978, makes explicit statements regarding time of performance, the manner in which information is to be submitted, the manner in which the reward money will be granted, and the purposes of the reward offer. Plaintiff alleges only that because Plaintiff believes he has submitted information which made "the truth come out," Plaintiff is entitled to the reward. However, the Court finds that is not the case. Rewards are contractual in nature

and to claim entitlement to the reward offer Plaintiff must, in the least, allege satisfaction of the terms of the reward offer.

The Court finds that Plaintiff's Complaint must be dismissed whether Plaintiff sought to accept the original offer or a "reenacted" offer. Plaintiff has not and cannot allege that a sufficient meeting of the minds occurred through Plaintiff's viewing of a motion picture on cable television. Further, even if the original February 1978 reward offer was "reenacted" in its entirety in the motion picture *The People v. Larry Flynt*, Plaintiff has not satisfied the conditions of that original reward offer. Therefore, the Court finds that dismissal of Plaintiff's Complaint, as it relates to Defendant Flynt, is appropriate.

### Defendants Farnell, Harlan, Cope, and Becker's Motion to Dismiss

Defendants, the Honorable Crockett Farnell, the Honorable Catherine Harlan, the Honorable Charles Weaver Cope, VI, and Assistant Attorney General Alison Becker, request dismissal of Plaintiff's Complaint on several grounds. Defendants, Farnell, Harlan, Cope, and Becker, state that dismissal is appropriate because they are entitled to absolute judicial immunity, they are entitled to Eleventh Amendment immunity, Plaintiff has failed to state a claim upon which relief may be granted, and Plaintiff's Complaint is so vague and ambiguous that a responsive pleading cannot reasonably be formulated.

Plaintiff's Complaint alleges that Defendants Farnell, Harlan, Cope, and Becker have violated the Sherman Act, the Civil Rights Act, and the Fifth Amendment of the United States Constitution.

#### A. Judicial Immunity

■■■ Throughout history, the Supreme Court of the United States has recognized that "a general principle of the highest importance to the proper administration of justice is that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convic-

tions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citing *Bradley v. Fisher*, 13 Wall. 335, 337, 20 L.Ed. 646 (1871)). In determining whether a defendant judge is immune from suit, a court must first determine whether the defendant judge had jurisdiction over the subject matter at issue. *See Stump*, 435 U.S. at 356, 98 S.Ct. 1099. When making the determination of whether the defendant judge had jurisdiction over the subject matter, a court must construe jurisdiction broadly in favor of the defendant judge. *See id.* It is not important for the court to consider whether the defendant judge acted in error, maliciously, or in excess of his authority; instead the court is instructed to look at whether the defendant judge acted in the "clear absence of all jurisdiction." *Id.* at 356–57, 98 S.Ct. 1099 (citing *Bradley*, 80 U.S. 335, 13 Wall. at 351, 20 L.Ed. 646). A defendant judge will only be deprived of his immunity when that defendant judge has acted in "clear absence of jurisdiction." *Id.* A plaintiff's allegation that a judge has engaged in a civil conspiracy against him or her does not rise to the level of being considered an action taken in a "clear absence of jurisdiction." *See Elder v. Athens–Clarke County, Georgia*, 54 F.3d 694, 695 (11th Cir.1995). In addition to a claim of conspiracy, judicial immunity has also been afforded where the actions giving rise to the plaintiff's claim were performed by the defendant judge while the defendant judge was out of his or her robe, was outside of the courtroom, and while the defendant judge was acting, quite possibly, in violation of state and/or federal procedural requirements. *See McAlester v. Brown*, 469 F.2d 1280, 1282 (1972). When determining whether a judge acted in a "judicial" capacity, a court must look to the "nature of the act itself." *Stump*, 435 U.S. at 362, 98 S.Ct. 1099. The court must consider whether the action complained of is an action that is normally performed by a judge and whether the parties expected to deal with the judge in a judicial capacity. *Id.*

██ After reviewing the four corners of Plaintiff's Complaint, the Court finds that Defendants, Farnell, Harlan, and Cope's, Motion to Dismiss will be granted. Plaintiff's Complaint makes several very broad allegations against Defendants Farnell, Harlan, and Cope. Plaintiff alleges that Defendants Farnell, Harlan, and Cope all acted in excess of their jurisdiction by performing such acts as: disregarding the case assignment rotation and appointing themselves as trial judge over Plaintiff's state law suit; engaging in a conspiracy against Plaintiff; making false, fictitious, and fraudulent statements; never allowing a non-lawyer *pro se* plaintiff to have a jury trial in their respective courtrooms; monopolizing the jury trial market through an agreement with the Florida Bar; suppressing and eliminating *pro se* plaintiff competition; agreeing with the Florida Bar to overcharge its captive rate-paying non-lawyer customers; depriving Plaintiff of his right to enforce a contract and his right to sue; discriminating against Plaintiff by depriving Plaintiff of equal justice; and requiring Plaintiff to have his pleadings signed by a member of the Florida Bar. Plaintiff also asserts that Defendant Harlan acted in excess of her jurisdiction and "impersonated a Circuit Judge" by holding a hearing on Defendant Jakes' motion for protective order while Plaintiff was "flying west over the mountains of Arizona."

In addition to the claims Plaintiff makes that allege Defendants Farnell, Cope, and Harlan acted in excess of their jurisdiction, Plaintiff's Complaint makes several other very broad and conclusory claims. However, Plaintiff has failed to allege anything that would warrant departure from the well-established principle that judges are immune from suit. While Plaintiff does allege that Defendant Judges Farnell, Harlan, and Cope acted outside of their jurisdiction in several instances, the conduct on which Plaintiff bases his claims involves actions that are clearly within the jurisdiction of the individual judges.

In addition, Plaintiff has failed to make anything more than conclusory allegations against Defendants Farnell, Harlan, and Cope. As Defendants Farnell, Harlan, and Cope are Circuit Judges for the State of Florida, and Plaintiff has failed to assert anything that would suggest that the Defendant Judges acted outside of their subject matter jurisdiction, the Court will properly dismiss all claims against Defendants Farnell, Harlan, and Cope.

### B. Eleventh Amendment Immunity

The Eleventh Amendment bars suit against a state government by its own citizens in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). A suit against a government official in his official capacity is really a suit against the state. *See Searcy v. Singletary*, 894 F.Supp. 1565, 1569 (M.D.Fla.1995) (citing *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). It is a well established principle that "even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663, 94 S.Ct. 1347. The State of Florida has not presently waived its Eleventh Amendment immunity in a general fashion and, more specifically, has not waived it in actions arising under 42 U.S.C. § 1983. *See Gamble v. Florida Dept. of Health and Rehabilitative Servs.*, 779 F.2d 1509 (1986); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

In addition to the claims against Defendants, Farnell, Harlan, and Cope, the Court finds that all claims against Defendant Becker will be dismissed. The Court has completely reviewed Plaintiff's Complaint and relevant case law and finds that Plaintiff has failed to make any allegations regarding Defendant Becker that would warrant the Court's variance from the well-established principles of Eleventh Amendment immunity. Plaintiff makes many of the same allegations against De-

fendant Becker as were previously mentioned when the Court discussed Defendants Farnell, Harlan, and Cope. Plaintiff's allegations range from knowingly making false statements and engaging in a conspiracy against Plaintiff, to failing to report the professional misconduct of Defendants Farnell, Harlan, Cope, Jakes, and Humann. However, once again, Plaintiff has completely failed to make more than mere conclusory allegations against Defendant Becker. The Court has considered Plaintiff's Complaint in the light most favorable to Plaintiff, has read Plaintiff's *pro se* complaint liberally, and has held Plaintiff's *pro se* Complaint to a less stringent standard than those drafted by attorneys. However, the Court finds that no construction of the factual allegations contained within Plaintiff's Complaint will support the cause of action Plaintiff seeks to assert. Therefore, the Court finds that dismissal of Plaintiff's Complaint, as to Defendant Becker, is appropriate.

The allegations against Defendant Becker, in addition to being conclusory in nature, arise from actions taken by Defendant Becker while in her official capacity as Assistant Attorney General. Plaintiff states that Defendant Becker engaged in and furthered the conspiracy allegedly entered into by Defendants Farnell, Harlan, and Cope. Plaintiff describes Defendant Becker's involvement in the cause of action as relating to her presence in the Circuit Court cause of action as attorney of record for Defendant's Farnell and Harlan. Therefore, even after viewing Plaintiff's Complaint in the light most favorable to Plaintiff the Court finds that all claims asserted against Defendant Becker will be dismissed pursuant to the Eleventh Amendment immunity Defendant Becker holds for acts taken in her official capacity.

### Defendant the Florida Bar's Motion to Dismiss

Defendant, the Florida Bar, requests dismissal of Plaintiff's Complaint, as it relates to the Florida Bar, because Plaintiff's Complaint alleges that Defendant, the

Florida Bar, has violated the Sherman Antitrust Act by engaging in a monopoly over the use of the judicial system. After careful examination of Plaintiff's Complaint, the Court finds that on the basis of a dispositive issue of law, no construction of the factual allegations contained within Plaintiff's Complaint will support the cause of action alleged against Defendant, the Florida Bar.

Mandatory membership in the Florida Bar of all persons licensed to practice law in the State of Florida is required by the Rules Regulating the Florida Bar. The Rules Regulating the Florida Bar were adopted by the Florida Supreme Court pursuant to authority granted under the Florida Constitution. *See* Fl. Const. Art. 5 § 15.

### A. The Sherman Act

█ It is a well established rule of law that the Sherman Act does not apply to conduct performed or authorized by a state, while acting in the state's sovereign authority. *See Parker v. Brown*, 317 U.S. 341, 350–51, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Sherman Act makes it unlawful for a private person, whether an individual or a corporation, to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states." 15 U.S.C. § 2. The Sherman Act makes no mention of restraints placed on states and fails to provide even a hint that Congress intended to restrain actions taken by the State. *See Parker*, 317 U.S. at 351, 63 S.Ct. 307. Therefore, any actions taken by the State, while acting under the State's sovereign authority, are not covered by the Sherman Act.

█ The Supreme Court of Florida has properly acted within its sovereign authority when enacting the Rules Regulating the Florida Bar. The Rules Regulating the Florida Bar mandate that all persons licensed to practice law in the State of Florida become members of the Florida Bar. The Florida Bar is compelled to act, or refrain from taking action, by the Supreme Court of Florida. Those actions complained of by Plaintiff relate directly to mandates given by The Supreme Court of Florida to the Florida Bar. The mandate that all persons licensed to practice law in the State of Florida be a member of the Florida Bar cannot be divorced from the Florida Supreme Court's exercise of its sovereign power. As the mandate requiring membership in the Florida Bar cannot be divorced from the Florida Supreme Court's sovereign powers, the actions taken by the Florida Bar are exempt from antitrust liability. *See Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984).

### B. The Civil Rights Act

█ Plaintiff's Complaint also appears to make allegations against the Florida Bar under 42 U.S.C. § 1983. In connection with these allegations, Plaintiff appears to state that the requirement of mandatory membership in the Florida Bar has deprived Plaintiff of his civil rights. However, Plaintiff has completely failed to allege a violation of the United States Constitution or a federal statute. Plaintiff seemingly relies on the conclusory allegation, which is completely unfounded, that the Florida Bar "has not allowed a non-lawyer *pro se* plaintiff to have a jury trial in its 49 [forty-nine] years." This allegation, in and of itself, will not satisfy the requirement that Plaintiff allege a violation of his constitutional or federal statutory rights. Therefore, the Court finds that Plaintiff has failed to allege anything within the four corners of Plaintiff's Complaint that would constitute a cause of action under 42 U.S.C. § 1983.

Although the Court did not consider the truth or falsity of Plaintiff's allegations regarding the status of jury trials for *pro se* plaintiffs, the Court notes that Plaintiff's allegation is completely unfounded. The Court specifically refers Plaintiff to: *McCarthy v. State*, 731 So.2d 778 (Fla. 4th DCA 1999); and *Neeld v. State*, 729 So.2d 961 (Fla. 2d DCA 1999). Both *McCarthy*

and *Neeld* are examples of cases where a non-lawyer *pro se* plaintiff represented himself before a jury.

■ The Court also notes that the Eleventh Circuit has expressly held that the Florida Bar is entitled to Eleventh Amendment immunity. *See Kaimowitz v. The Florida Bar*, 996 F.2d 1151, 1153 (11th Cir.1993). The only exception to the Florida Bar's Eleventh Amendment immunity arises in cases involving declaratory or injunctive relief to protect a federal constitutional right. *See Edelman*, 415 U.S. at 651, 94 S.Ct. 1347. However, in order to sustain an action under this exception it is necessary for the plaintiff to allege that as a result of the unconstitutional conduct the plaintiff individually has suffered some injury. Plaintiff, in the case at hand, has not sufficiently alleged any injury that would place Plaintiff's cause of action within the Eleventh Amendment immunity exception. Therefore, the Court finds that Plaintiff's Complaint, as it relates to the Florida Bar, will be dismissed.

### Defendant Jakes and Humann's Motion to Dismiss

Defendants Jakes and Humann request dismissal of Plaintiff's Complaint, as it relates to Defendants Jakes and Humann, for failure to state a claim upon which relief can be granted, pursuant Federal Rule of Civil Procedure 12(b)(6). Defendants Jakes and Humann state that Counts I and V should be dismissed because Plaintiff seeks to hold Defendants Jakes and Humann liable for becoming members of the Florida Bar and for complying with mandates made by the Florida Supreme Court, as contained within the Rules Regulating the Florida Bar. Defendants Jakes and Humann state that Counts II and III of Plaintiff's Complaint should be dismissed because Plaintiff has failed to comply with the requirements of properly pleading a 42 U.S.C. § 1983 claim. Defendants Jakes and Humann state that in order to properly comply with the pleading requirements necessary in a section 1983 action, Plaintiff must show that the injurious conduct complained of

was committed by a person acting under color of state law and that that action has deprived Plaintiff of some constitutional or statutory right. *See Chumbley v. Gashinski*, 983 F.Supp. 1406, 1409 (M.D.Fla.1997).

■ Once again, after careful review of Plaintiff's Complaint, the Court finds that dismissal is warranted. As the Court has previously found that the mandatory membership within the Florida Bar of all individuals licensed to practice law in the State of Florida is exempt from anti-trust scrutiny, the actions of private attorneys that do nothing more than comply with the Supreme Court of Florida's mandates are likewise not subject to anti-trust scrutiny. Therefore, Counts I and V of Plaintiff's Complaint, as they relate to Defendants Jakes and Humann, will be dismissed.

The Court also finds that Counts II and III of Plaintiff's Complaint will be dismissed. Plaintiff has failed to demonstrate to this Court that Plaintiff has suffered a violation of his constitutional or statutory rights at the hands of either Defendant Jakes or Defendant Humann. Therefore, Counts II and III of Plaintiff's Complaint will be dismissed. Accordingly, it is

**ORDERED** that Defendant, Larry Claxton Flynt's, Motion to Dismiss, (Dkt.8), be **GRANTED;** Defendants, the Honorable Crockett Farnell, the Honorable Catherine Moore Harlan, the Honorable Charles Weaver Cope, VI, and Alison L. Becker's, Motion to Dismiss, (Dkt.9), be **GRANTED;** Defendant, the Florida Bar's, Motion to Dismiss, (Dkt.21), be **GRANTED;** Defendants, Frank R. Jakes and James W. Humann's, Motion to Dismiss, (Dkt.22), be **GRANTED;** that Plaintiff's Complaint be **DISMISSED** with prejudice; and that the Clerk of the Court be **DIRECTED** to enter judgement consistent herewith.