### In re Richard LEBEAU, Theresa LeBeau, Debtors.

### No. 99–16940–8W7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 18, 2000.

---

Andrea Whitehill, Venice, FL, for debtors.

Ralph Jay Harpley, Tampa, FL, Chapter 7 Trustee.

### MEMORANDUM DECISION AND ORDER

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came before the court at a hearing ("Hearing") to determine whether a reaffirmation agreement ("Agreement") executed by the debtors, Richard and Theresa LeBeau ("Debtors"), after the granting of their discharge was nevertheless "made before the granting of the discharge" as required by Bankruptcy Code § 524(c)(1). For the reasons set forth below, the court finds that the Agreement was "made" prior to the Debtor's discharge and, therefore, is enforceable.

### FACTUAL FINDINGS

On October 20, 1999, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtors were granted a discharge on January 27, 2000. Three weeks later, on February 18, 2000, the Debtors' attorney filed the Agreement with the court. While the signature of the creditor, Ford Credit ("Cred-

itor") is dated in November 1999, the Debtors' signatures were dated February 3, 2000—three months after the Creditor's date of signature and a week after the date of the Debtors' discharge.

At the Hearing, it was clear from the evidence that the parties had reached an agreement to affirm the debt immediately following the time of the Debtors' filing their Chapter 7 petition. Indeed, their intention to reaffirm the debt was indicated on their "Chapter 7 Statement of Intention" which was filed with their petition. The Agreement was then prepared and executed in November 1999 by the Creditor. Pursuant to the terms of the Agreement, the Debtors have been making the requisite payments since December 1999.

When asked the explain the delay, the Debtors' attorney admitted that her office was the probable cause of such delay, both in obtaining the Debtors' signature and filing the Agreement with the court.

### CONCLUSIONS OF LAW

Reaffirmation agreements are governed by Bankruptcy Code § 524(c) which provides that such agreements are enforceable only if:

"(1) the agreement is enforceable under applicable nonbankruptcy law; (2) the agreement was made before the court granted the debtor's discharge; (3) the agreement clearly states that the debtor may rescind the agreement any time before the discharge is granted or within 60 days after the agreement is filed with the court, whichever is later, by notifying the creditor; (4) if the debtor is represented by an attorney, the attorney submits his affidavit along with an agreement stating that the debtor voluntarily entered into the agreement and that the agreement will not impose an undue hardship on the debtor; (5) if the debtor is not represented by an attorney, the court finds that the agreement will not impose an undue hardship on the debtor and the agreement is in the best interests of the debtor; and (6) the debtor does not rescind the agreement before discharge or within 60 days after the agreement is filed, whichever is later."

*TranSouth Financial Corp. of Florida v. Johnson (In re Johnson),* 931 F.2d 1505, 1509 n. 6 (11th Cir.1991) (summarizing Bankruptcy Code § 524(c)). Other than the question of whether the Agreement was "made" before the Debtors' discharge as required by subsection (c)(1), there is no issue that all of these requirements have been met.

It is undisputed that agreements entered into after the discharge are unenforceable.[1] However, few courts have actually attempted to define the term "made." Typically, courts have implicitly considered the date of execution by the parties to be when the agreement was "made," without discussion of the term. *See, e.g., Whitmer,* 142 B.R. at 812–13; *Burgett,* 95 B.R. at 524. However, at least one court has defined the term:

... for Section 524(c)(1) purposes, a reaffirmation agreement is "made" no earlier than the time when the requisite writing which embodies it has been fully executed by the debtor ....

*Collins,* 243 B.R. at 220.[2]

Concededly, it is true that the date of execution can be, and is most often indica-

---

**1.** *See, e.g., In re Collins,* 243 B.R. 217, 220 (Bankr.D.Conn.2000); *In re Edwards,* 236 B.R. 124, 126 (Bankr.D.N.H.1999); *In re Perry,* 225 B.R. 497, 498 n. 1 (Bankr.D.Colo. 1998); *In re Whitmer,* 142 B.R. 811, 812–13 (Bankr.S.D.Ohio 1992); *In re Brinkman,* 123 B.R. 611, 612 (Bankr.N.D.Ind.1991); *In re Burgett,* 95 B.R. 524 (Bankr.S.D.Ohio 1988); *In re Eccleston,* 70 B.R. 210, 212 (Bankr. N.D.N.Y.1986); *In re Gruber,* 22 B.R. 768,

769 (Bankr.N.D.Ohio 1982); *In re Long,* 22 B.R. 152, 153 (Bankr.D.Maine 1982); *In re McQuality,* 5 B.R. 302, 303 (Bankr.S.D.Ohio 1980); *In re Coots,* 4 B.R. 281, 282 (Bankr. S.D.Ohio 1980).

**2.** The *Collins* court cites to *In re Grabinski,* 150 B.R. 427, 431 (Bankr.N.D.Ill.1993), for indirect support for its conclusion that a reaffirmation is "made" when the debtor executes

tive of the date the affirmation agreement is "made." For example, the debtors in the *Collins* case failed to provide for disposition of the creditor's collateral on their statement of intention. Thus, the creditor in that case was forced to file a motion to compel the debtors to reaffirm, redeem or surrender the car. The motion was set for a hearing, however, after the debtors had been granted a discharge, which led to the withdrawal of the motion. *Id.* at 218. Subsequently, a reaffirmation agreement was filed. The reaffirmation was dated post-discharge and on the facts presented in that case, the reaffirmation agreement was clearly "made" after the discharge. *Id.* at 219–20.

█ However, this court cannot agree to such a bright-line test enunciated by the *Collins* court. Instead, this court believes that under the appropriate circumstances, determination of when a reaffirmation agreement is "made" may turn on extrinsic evidence and general contract principles. *See* James S. Cole, *Reaffirmations: Procedures and Problems,* 54 J.Mo.B. 237–38 (1998) ("This writer believes that *made* is defined by ordinary contract principles.") (Emphasis added).

There is indirect support for this proposition in the Eleventh Circuit. In *Taylor v. AGE Fed. Credit Union (In re Taylor),* 3 F.3d 1512, 1516 (11th Cir.1993), the Eleventh Circuit held that Bankruptcy Code § 521 requires that the debtor either reaffirm or redeem in order to retain the collateral property. In a footnote discussing reaffirmation, the court stated that "[r]eaffirmation contemplates a voluntary agreement between a creditor and debtor whereby a debt which is otherwise dis-

chargeable with respect to personal liability of the debtor, is renegotiated or reaffirmed by both parties." *Id.* at 1514, n. 2. It follows then that the re-negotiation by the parties necessarily involves the contemplation of a new contract.[3] As such, it is only natural that contract principles necessarily would govern the making of the new agreement.

█ Under fundamental and basic contract principles, "[i]n order to form a binding contract, there must be a *meeting of the minds* 'by acceptance and *performance* within the terms of the offer.'" *Otworth v. Florida Bar,* 71 F.Supp.2d 1209, 1215 (M.D.Fla.1999) (emphasis added). *See also* 11 Fla.Jur.2d Contracts § 21 (1997) ("Without a meeting of the minds of the parties on an essential element, there can be no enforceable contract"). And to determine when this "meeting of minds" and "performance" actually occurred, a court may consider extrinsic evidence. Other courts have also been receptive of evidence outside of the actual affirmation agreement itself. *Cf. In re Coots,* 4 B.R. 281, 283 ("In the case at bar, the creditor has not offered any evidence indicating the subject agreement was entered into prior to . . . the date of discharge.").

█ In this case, evidence was introduced that compels this court to conclude that both parties had come to "a meeting of minds" prior to the Debtors' discharge. The Debtors' Chapter 7 Statement of Intention clearly stated that they would reaffirm the debt. There was no dispute that both parties had reached an agreement early in the case well prior to the granting of the discharge. In November 1999, their

---

the reaffirmation agreement. *Collins,* 243 B.R. at 220. In *Grabinski,* the court held that a debtor's letter to the creditor promising to "catch up" with her delinquent payments could not be construed as a reaffirmation agreement because it failed to comply with 11 U.S.C. § 524. *Grabinski,* 150 B.R. at 429–31. The fact that the letter was dated post-discharge was only one of the many reasons it failed to meet the requirements of § 524. This court is not suggesting that it would rule

differently under the same facts presented to the *Grabinski* court. In that case, any extrinsic evidence regarding when the reaffirmation agreement was "made" would have been futile as the letter failed to meet the remaining requirements of section 524(c).

**3.** Which is not to say that the new agreement may not be identical to the terms set forth in the old.

agreement was reduced to writing and signed by the Creditor. The Debtor commenced performance under the Agreement by making payments in December 1999. Thus, at the latest, the Agreement was "made" in December 1999 when there was a "meeting of minds" and performance commenced pursuant to the terms of the Agreement.

Accordingly, the court finds that under the circumstances present in this case, the Agreement was "made" prior to the Debtors' discharge and meets the requirements of 11 U.S.C § 524(c)(1).